ORIGINAL

FILED IN OPEN COURT
U.S.D.C. - Atlanta

MAR 1 3 2018

JAMES N. HATTEN, Clerk
By: /s/ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JUN YING | Criminal Indictment<br><br>No. 1:18-CR-074 |

THE GRAND JURY CHARGES THAT:

### Count One

1. On or about August 28, 2017, in the Northern District of Georgia and elsewhere, the defendant, JUN YING, did knowingly execute and attempt to execute a scheme and artifice (1) to defraud other persons in connection with securities of Equifax Inc., and (2) to obtain, by means of false and fraudulent pretenses, representations, and promises, money and property in connection with the purchase and sale of securities of Equifax Inc., an issuer with a class of securities registered under Section 12 of the Securities Exchange Act of 1934 (the Exchange Act).

### Background

At all times relevant to this Indictment

2. Equifax Inc. was a consumer credit reporting agency headquartered in Atlanta, Georgia. Equifax was a public company whose stock was traded on the New York Stock Exchange (NYSE) under the ticker symbol EFX. Equifax's

securities were registered with the United States Securities and Exchange Commission (SEC) pursuant to Section 12(b) of the Exchange Act.

3. JUN YING was the Chief Information Officer for Equifax's U.S. Information Solutions.

4. Equifax required its officers, directors, and employees, including JUN YING, to abide by its Business Ethics and Compliance Program, which included an Insider Trading Policy. The Insider Trading Policy provided that employees may not trade in Equifax securities if they "are aware of **material nonpublic information**."

5. On July 25, 2017, JUN YING received an email reminding him that he could not trade in Equifax securities if he was aware of material nonpublic information.

6. From in or about mid-May 2017 through July 2017, unknown individuals obtained unauthorized access to some of Equifax's databases. As a result of this security breach, the unknown individuals acquired the names, Social Security numbers, birth dates, addresses and, in some instances, driver's license numbers of approximately 145 million people.

7. On or about July 29, 2017, Equifax discovered suspicious activity on its network. It began an investigation and remediation efforts.

8. Over the next several weeks, Equifax and its advisors reviewed forensic data to determine the scope of the intrusion.

9. On or about August 12, 2017, through August 15, 2017, Equifax changed internal administrative credentials for many internal databases. JUN

YING was aware of these changes and Equifax employees who reported to JUN YING were responsible for changes to some of these credentials.

10. By on or about August 15, 2017, Equifax had determined that consumers' personally identifiable information likely was taken as a result of the breach.

11. On or about August 15, 2017, Equifax imposed a special trading blackout date for its employees who were aware of the breach.

12. On or about Friday, August 25, 2017, JUN YING and several of Equifax employees who reported to him were asked to assist in responding to the breach, although he was not informed that Equifax had been breached. This work was portrayed as part of a breach opportunity involving a potential Equifax customer.

13. In texts sent by JUN YING on or about August 25, 2017, to W.M., JUN YING said "Sounds bad. We may be the one breached" and "I'm starting to put 2 and 2 together."

14. On or about Monday, August 28, 2017, JUN YING executed three web searches from his Equifax computer.

   a. The first was recorded by his computer as:

   https://www.bing.com/search?q=experian+breach&form=EDGTCT&qs=AS&cvid=65590692da184d718f9d32a608a154fb&cc=US&setlang=en-US

This url leads to a Bing search page showing a search that reads: "experian breach".

   b. The second was recorded by his computer as:

3

https://www.bing.com/search?q=experian+stock+price+9%2F15%2F2015&form=EDGEAR&qs=PF&cvid=a0663343a9174835976613f92acdceea&cc=US&setlang=en-US

This url leads to a Bing search page showing a search that reads: "experian stock price 9/15/2015".

  c. The third was recorded by his computer as:

https://www.bing.com/search?q=experian+breach+2015&form=EDGTCT&qs=AS&cvid=0a9c3600b1454b6e82edafd3bb5a5285&cc=US&setlang=en-US

This url leads to a Bing search page showing a search that reads: "experian breach 2015".

15. JUN YING held stock options for Equifax securities in a UBS Financial Services account ending in 24 EF.

16. Less than an hour after the web searches described above, JUN YING accessed a UBS website. He executed trades that exercised all of his available stock options in the account ending in 24 EF, resulting in him receiving 6,815 shares of Equifax stock in the same account. JUN YING sold all of these shares, receiving over $950,000, for a realized gain of over $480,000.

17. On or about August 29, 2017, JUN YING texted M.D. "I think some big media announcement is coming about us" and "I think it might be bad."

18. Nine days later, on or about September 7, 2017, after the stock market had closed for the day, Equifax publicly disclosed the data breach. The following day, Equifax's stock dropped in price.

### Defendant's Scheme to Defraud

19. In violation of his obligations under the Insider Trading Policy and of the fiduciary and other duties of trust and confidence that JUN YING owed to Equifax and its shareholders, on or about August 28, 2017, JUN YING traded in Equifax securities on the basis of material nonpublic information related to the data breach, and thereby earned illegal profits and illegally avoided losses.

### Execution of Defendant's Scheme to Defraud

20. On or about August 28, 2017, in the Northern District of Georgia and elsewhere, for the purpose of executing and attempting to execute his scheme and artifice to defraud, and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, JUN YING, exercised approximately 6,815 Equifax stock options and sold the resulting shares on the basis of material nonpublic information.

All in violation of Title 18, United States Code, Section 1348.

### Count Two

21. The factual allegations set forth in paragraphs 2 through 18 are realleged and incorporated by reference as though fully set forth herein.

22. On or about August 28, 2017, in the Northern District of Georgia and elsewhere, the defendant, JUN YING, by use of the means and instrumentalities of interstate commerce, the mails, and facilities of national securities exchanges, directly and indirectly, did knowingly and willfully use manipulative and deceptive devices and contrivances in connection with the purchase and sale of

securities of Equifax Inc. and did (a) employ a device, scheme and artifice to defraud; (b) make untrue statements of material facts and omit to state material facts necessary in order to make the statement made, in light of the circumstances under which they were made, not misleading; and (c) engage in acts, practices and courses of business which would and did operate as a fraud and deceit upon any person, in connection with the purchase and sale of said securities, in that the defendant JUN YING exercised approximately 6,815 Equifax stock options and sold the resulting shares on the basis of material nonpublic information.

All in violation of Title 15, United States Code, Section 78j(b) and Section 78ff; and Title 17, Code of Federal Regulations, Section 240.10b-5 and Section 240.10b5-1.

## Forfeiture Provision

Upon conviction of one or more of the offenses alleged in Counts One and Two of this Indictment, the defendant, JUN YING, shall forfeit to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C), all property, real and personal, constituting or derived from proceeds traceable to the offense(s).

If, as a result of any act or omission of the defendant, any property subject to forfeiture:
    a. cannot be located upon the exercise of due diligence;
    b. has been transferred or sold to, or deposited with, a third person;
    c. has been placed beyond the jurisdiction of the Court;
    d. has been substantially diminished in value; or

e.  has been commingled with other property which cannot be subdivided without difficulty;

the United States intends, pursuant to Title 18, United States Code, Sections 982(b)(1); Title 21, United States Code, Section 853(p); and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of said defendant up to the value of the forfeitable property.

A ____TRUE____ BILL

_____
FOREPERSON

BYUNG J. PAK
  *United States Attorney*

*/s/ signature*

CHRISTOPHER J. HUBER
  *Assistant United States Attorney*
Georgia Bar No. 545627

*/s/ signature*

LYNSEY M. BARRON
  *Assistant United States Attorney*
Georgia Bar No. 661005

600 U.S. Courthouse
75 Ted Turner Drive SW
Atlanta, GA 30303
404-581-6000; Fax: 404-581-6181

7