# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | CRIMINAL ACTION |
| v. | ) | |
| | ) | NO. 1:18-CR-074-WSD-RGV |
| JUN YING, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT'S MOTION TO DISMISS THE INDICTMENT

SCHULTE ROTH & ZABEL LLP
919 Third Avenue
New York, New York 10022
Telephone:  (212) 756-2000

BRYAN CAVE LEIGHTON PAISNER LLP
One Atlantic Center – 14th Floor
1201 West Peachtree Street NW
Atlanta, Georgia 30309
Telephone: (404) 572-6600

*Attorneys for Defendant Jun Ying*

11793952

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...........................................................1

FACTUAL ALLEGATIONS ..............................................................2

ARGUMENT .................................................................................5

    I.     THE INDICTMENT IMPROPERLY CHARGES THE SAME
          OFFENSE IN TWO COUNTS ...............................................5

    II.    THE INDICTMENT FAILS TO ALLEGE THE ESSENTIAL
          ELEMENTS OF THE CHARGED OFFENSES ..................................9

          A.    The Essential Elements Of An Insider Trading Charge
                Under The "Classical" Theory ...................................11

          B.    The Indictment Fails To Allege That Mr. Ying Knowingly
                Possessed Material Nonpublic Information .............................12

          C.    The Indictment Fails To Allege That Mr. Ying  Used
                Material Nonpublic Information ................................18

CONCLUSION ..............................................................................25

# <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                   **Page(s)**

*Blockburger v. United States*,
   284 U.S. 299 (1932)..............................................................................6

*Brooks v. Blue Cross & Blue Shield of Fla., Inc.*,
   116 F.3d 1364 (11th Cir. 1997) .........................................................4

*Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*,
   467 U.S. 837 (1984)............................................................................22

*Chiarella v. United States*,
   445 U.S. 222 (1980)..........................................................7, 11, 19, 23

*Cosby v. Jones*,
   682 F.2d 1373 (11th Cir. 1982) .......................................................10

*Dirks v. SEC,*
   463 U.S. 646 (1983)....................................................................11, 23

*Ernst & Ernst v. Hochfelder*,
   425 U.S. 185 (1976)............................................................................22

*Fried v. Stiefel Labs., Inc.*,
   814 F.3d 1288 (11th Cir. 2016) ...................................................18, 19

*Nat'l Ass'n of State Util. Consumer Advocates v. FCC*,
   457 F.3d 1238 (11th Cir. 2006) ...................................................22, 23

*SEC v. Adler*,
   137 F.3d 1325 (11th Cir. 1998) ...............................11, 12, 18, 19, 20

*SEC v. Schvacho*,
   991 F. Supp. 2d 1284 (N.D. Ga. 2014)...........................................12

*SEC v. Tex. Gulf Sulphur Co.*,
   401 F.2d 833 (2d Cir. 1968) .............................................................17

*SEC v. Truong*,
    98 F. Supp. 2d 1086 (N.D. Cal. 2000) ................................................................ 10

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) .............................................................................................. 10

*U.S. SEC v. Ginsburg*,
    362 F.3d 1292 (11th Cir. 2004) ............................................................. 11, 12, 18

*United States v. Anderson*,
    533 F.3d 623 (8th Cir. 2008) ............................................................................... 20

*United States v. Bobo*,
    344 F.3d 1076 (11th Cir. 2003) ..................................................................... 10, 13

*United States v. Brown*,
    459 F.3d 509 (5th Cir. 2006) ............................................................................... 10

*United States v. Butler*,
    351 F. Supp. 2d 121 (S.D.N.Y. 2004) .............................................................. 6, 9

*United States v. Davis*,
    854 F.3d 1276 (11th Cir.), *cert. denied*,
    138 S. Ct. 379 (2017) (mem.) ............................................................................... 6

*United States v. Gardner*,
    417 F. Supp. 2d 703 (D. Md. 2006) ...................................................................... 9

*United States v. Melvin*,
    143 F. Supp. 3d 1354 (N.D. Ga. 2015) ............................................................... 12

*United States v. Newman*,
    773 F.3d 438 (2d Cir. 2014), *abrogated on other grounds by*
    *Salman v. United States*, 137 S. Ct. 420 (2016) ................................................ 10

*United States v. O'Hagan*,
    521 U.S. 642 (1997) ............................................................... 7, 11, 19, 22, 23

*United States v. Ortiz*,
    No. CR–06–019–TUC–DCB,
    2007 WL 1629995 (D. Ariz. June 4, 2007) .......................................................... 9

*United States v. Rajaratnam*,
   719 F.3d 139 (2d Cir. 2013) ...............................................................20

*United States v. Royer*,
   549 F.3d 886 (2d Cir. 2008) ..............................................................20

*United States v. Schmitz*,
   634 F.3d 1247 (11th Cir. 2011) .................................................... 9-10

*United States v. Slawson*,
   Criminal Case No. 1:14–CR–00186–RWS–JFK,
   2014 WL 5804191 (N.D. Ga. Nov. 7, 2014) .......................................8

*United States v. Smith*,
   155 F.3d 1051 (9th Cir. 1998) ......................................................19, 20

*United States v. Whitman*,
   555 F. App'x 98 (2d Cir. 2014) ..........................................................20

*United States v. Williams*,
   527 F.3d 1235 (11th Cir. 2008) .......................................................6, 7

*Whalen v. United States*,
   445 U.S. 684 (1980)..............................................................................9

*Whitman v. United States*,
   135 S. Ct. 352 (2014) (mem.) ............................................................24

**Statutes**

The Securities Exchange Act of 1934 ("Exchange Act") § 10(b),
   15 U.S.C. § 78j(b).......................................................................*passim*

The Securities Exchange Act of 1934 ("Exchange Act") § 32,
   15 U.S.C. § 78ff .........................................................................2, 12

18 U.S.C. § 1348...................................................................................*passim*

**Regulations**

Rule 10b-5 of Securities & Exchange Commission,
  17 C.F.R. §§ 240.10b-5 (1948) ................................................................*passim*

Rule 10b5-1 of Securities & Exchange Commission,
  17 C.F.R. § 240.10b5-1 (2000) ...............................................................*passim*

**Other Authorities**

*The Corporate And Criminal Fraud Accountability Act of 2002*,
  S. Rep. No. 107-146 (May 6, 2002) ....................................................................9

Final Rule, Selective Disclosure and Insider Trading, 65 Fed. Reg.
  51716 (Aug. 24, 2000) .......................................................................................17

Eleventh Circuit Pattern Jury Instructions (Civil Cases), 6.3.2 (2013) ............. 18-19

Eleventh Circuit Pattern Jury Instructions (Criminal Cases), B9.1A
  (2016) ................................................................................................................12

## PRELIMINARY STATEMENT

The government's theory in this case appears simple – Mr. Ying, an Equifax, Inc. ("Equifax") employee, engaged in insider trading after becoming "aware of" material nonpublic information.   However, this straightforward theory is contradicted by the facts alleged in the Indictment.  The Indictment describes little more than an employee who exercised options after being *lied to* by Equifax about the "material nonpublic information" at issue.  The Indictment is deficient and should be dismissed for the following reasons:

*First*, the Indictment improperly charges Mr. Ying with insider trading under two separate statutes requiring proof of the same elements.  To avoid prejudicing Mr. Ying with the jury and risking that Mr. Ying will be punished twice for the same offense, at a minimum, one of the counts in the Indictment must be dismissed.

*Second*, the Indictment does not allege sufficient facts to support the charge that Mr. Ying had knowledge of material nonpublic information at the time he exercised his Equifax options and sold the resulting shares.  The Indictment fails to identify what "material nonpublic information" Mr. Ying purportedly possessed. Assuming the alleged material nonpublic information is the existence of a data breach at Equifax, the limited facts alleged tend to contradict that Mr. Ying knew

1

Equifax had been breached.  The Indictment does not allege that anyone told Mr. Ying that Equifax had been breached and concedes that Mr. Ying was not informed of the breach.  Worse yet, the Indictment admits that Mr. Ying was lied to by Equifax and told that the work requested from his team related to a breach involving a customer of Equifax.

*Third*, the Indictment improperly attempts to skirt the Eleventh Circuit's requirement that Mr. Ying *used* material nonpublic information.  Instead, the Indictment asserts in both counts, in a conclusory fashion, that Mr. Ying traded "on the basis of" material nonpublic information.  In doing so, the Indictment fails to allege an essential element of insider trading:   that a defendant *use* material nonpublic information when trading.

## FACTUAL ALLEGATIONS

On March 13, 2018, a grand jury in the Northern District of Georgia returned a two-count indictment against Mr. Ying, charging him with violating (1) 18 U.S.C. § 1348, and (2) 15 U.S.C. §§ 78j(b), 78ff, and 17 C.F.R. §§ 240.10b-5, 240.10b5-1.  Indictment [Doc. 1] (hereinafter, "Indict.") ¶¶ 1, 20, 22.[1]

According to the Indictment, Mr. Ying was the Chief Information Officer for Equifax's U.S. Information Solutions ("USIS").  *Id.* ¶ 3.  During the summer of

---

[1] The allegations contained in the Indictment are accepted as true solely for the purposes of this motion.

2017, Equifax identified suspicious activity on its network and undertook an effort to investigate and remediate this activity. *Id.* ¶ 7. By on or about August 15, 2017, Equifax determined that sensitive consumer data was likely obtained as a result of a breach of Equifax's systems. *Id.* ¶ 10. The Indictment does not allege that Mr. Ying was told that Equifax had made this determination or that Mr. Ying knew at that time that Equifax had been breached.

On August 15, 2017, Equifax imposed trading restrictions on the Equifax employees aware of the breach. *Id.* ¶ 11. The Indictment concedes that Mr. Ying was not one of the individuals made aware of the breach. *See id.* ¶ 12. Thereafter, on August 25, 2017, Mr. Ying and others were asked to assist in an effort related to a customer breach opportunity (*i.e.*, potential work for a customer that had been breached). *Id.* Despite his role as Chief Information Officer for Equifax USIS, the Indictment states that Mr. Ying was *not* informed that Equifax had itself been breached or that the work his team was being asked to perform was connected to a breach at Equifax. *Id.* Instead, the Indictment admits that Equifax lied to Mr. Ying and his team to conceal the fact that the breach was internal, and led them to believe the work related to a "breach opportunity involving a potential Equifax *customer*." *Id.* (emphasis added).

In a series of text messages exchanged on August 25, 2017, Mr. Ying speculated to a colleague that Equifax "*may* be the one breached," and stated that he was "starting to put 2 and 2 together." *Id.* ¶ 13 (emphasis added). The Indictment does not allege that Mr. Ying was told, at any time, that Equifax had been breached, but rather concedes that Mr. Ying was lied to and informed that the work he was undertaking was for a customer, not for Equifax.

On August 28, 2017, Mr. Ying performed three Internet searches concerning a data breach suffered by another company approximately two years earlier. *Id.* ¶ 14. The results of these searches, based on the URLs referred to in the Indictment, showed that the price of the other company's stock increased rather than decreased at the time of that company's breach.[2]

---

[2] The search term alleged in Paragraph 14(b) of the Indictment is "experian stock price 9/15/2015." The Court can take judicial notice of the fact that the closing price of Experian's stock on September 15, 2015 was greater than its opening price.

Moreover, information such as this and other documents that are referenced in the Indictment should be considered incorporated by reference and recognized by the Court when deciding this motion. *Cf. Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) ("[W]here the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings[.]"). We have not identified any reported federal criminal cases in which the incorporation by reference doctrine was addressed, but that should not prevent the Court from considering this information in connection with the instant motion; the standards applied in criminal cases should be higher than that of civil cases. This is particularly true here given the quality of the exculpatory material contained in the very documents relied upon and referenced in the Indictment.

On August 28, 2017, Mr. Ying exercised the available Equifax stock options in his account at UBS Financial Services and sold the resulting shares.  *Id.* ¶ 16. As of the time he traded, it is not alleged that Mr. Ying was informed by anyone at Equifax that the company had been breached.  Rather, the allegations, at best, support the conclusion that Mr. Ying had speculated that Equifax may have been breached, at a time when Equifax was affirmatively concealing this very fact.[3]

On September 7, 2017, Equifax publicly disclosed that it had been the victim of a data breach.  *Id.* ¶ 18.  The day after the announcement, the price of Equifax's stock decreased.  *Id.*

## ARGUMENT

### I.  THE INDICTMENT IMPROPERLY CHARGES THE SAME OFFENSE IN TWO COUNTS

Both counts of the Indictment charge Mr. Ying with engaging in securities fraud by means of illegal insider trading.  Count One charges Mr. Ying with violating 18 U.S.C. § 1348 ("Section 1348") and Count Two charges Mr. Ying with violating Section 10(b) of the Securities Exchange Act of 1934 ("Exchange

---

[3] The Indictment also references text messages Mr. Ying sent to a colleague the day after he traded, but does not allege that those text messages were written based on information available to him when he traded.  *See* Indict. ¶ 17.  Information that Mr. Ying may have learned *after* he traded and any speculation he may have expressed based on such information has no bearing on his knowledge at the time he traded.  Additionally, the Indictment contains only selective quotes taken out of context from that text message exchange, whereas the complete content of those messages are inconsistent with Mr. Ying's knowing Equifax had been breached.

5

Act") and Rule 10b-5.  Because the Indictment improperly charges Mr. Ying with the same offense in multiple counts, it should be dismissed as multiplicitous.

A multiplicitous indictment violates double jeopardy principles.  *United States v. Davis*, 854 F.3d 1276, 1286 (11th Cir.), *cert. denied,* 138 S. Ct. 379 (2017) (mem.).  It places a defendant at risk of being subjected to more than one punishment for the same offense and may prejudice the defendant and confuse the jury by suggesting "that not one but several crimes have been committed." *United States v. Williams*, 527 F.3d 1235, 1241 (11th Cir. 2008) (citation omitted).  Where the court can determine at the motion to dismiss stage that counts are multiplicitous, it is appropriate for one count to be dismissed.  *See, e.g.*, *United States v. Butler*, 351 F. Supp. 2d 121, 132 (S.D.N.Y. 2004) (dismissing count as multiplicitous).

To determine whether an indictment is multiplicitous, courts apply the *Blockburger* test.  "Under *Blockburger*, when a single, completed criminal transaction violates two or more criminal statutes, the Double Jeopardy Clause does not shield a defendant against prosecution under one or more of the applicable statutes so long as 'each statute requires proof of an additional fact which the other does not . . . .'"  *Williams*, 527 F.3d at 1240 (alteration in original) (quoting *Blockburger v. United States*, 284 U.S. 299, 304 (1932)).  The Eleventh Circuit

treats this inquiry as "one of statutory interpretation in which [it] examine[s] the elements of each offense to determine whether Congress intended to authorize cumulative punishments." *Williams*, 527 F.3d at 1240.

Section 10(b) and Rule 10b-5 proscribe fraudulent conduct in connection with securities.  Section 10(b) proscribes "(1) using any deceptive device (2) in connection with the purchase or sale of securities, in contravention of rules prescribed by the Commission."  *United States v. O'Hagan*, 521 U.S. 642, 651 (1997).  Rule 10b-5 forbids persons from employing "any device, scheme, or artifice to defraud . . . in connection with the purchase or sale of any security."  17 C.F.R. § 240.10b-5(a) (1948).  In Count Two, the government alleges Mr. Ying violated Section 10(b) and Rule 10b-5 because he "exercised approximately 6,815 Equifax stock options and sold the resulting shares on the basis of material nonpublic information."  Indict. ¶ 22.  Courts treat as deceptive and fraudulent an individual's use of material nonpublic information in trading when it is done in violation of a fiduciary duty.  *See e.g.*, *O'Hagan*, 521 U.S. at 651-52; *Chiarella v. United States*, 445 U.S. 222, 229 (1980).

The Indictment also charges Mr. Ying with this same conduct in a separate count – alleging again that he committed securities fraud, this time in violation of Section 1348.  Like Section 10(b), Section 1348 prohibits (1) the execution (or

attempted execution) of a scheme or artifice (2) to defraud any person or to obtain, by means of false or fraudulent pretenses, representations, or promises, any money or property (3) in connection with a security.  18 U.S.C. § 1348.  According to Count One, Mr. Ying violated Section 1348 when he "traded in Equifax securities on the basis of material nonpublic information" in violation of his obligations under an Equifax policy and duties he owed to the company.  Indict. ¶ 19.

The elements of proof for both statutes are identical, particularly in this case, where the theory of liability is classical insider trading.[4]  By alleging the same facts in support of both counts, *see* Indict. ¶ 21, and also using the same charging language, the Indictment, on its face, demonstrates the multiplicity of the two charges.  To establish that Mr. Ying violated Section 1348 based on insider trading, the government must offer the same proof required to show that he violated Section 10(b) and Rule 10b-5.  Where, as here, proof of a violation of one charged offense (*i.e.*, Section 10(b)) is necessary, and sufficient, for purposes of finding liability under another separately charged offense (*i.e.*, Section 1348), the

---

[4] We have not identified any other case where, as here, a defendant was charged under Section 1348 and Section 10(b) with classical insider trading.  The few cases where insider trading was charged under Section 1348 were not based on classical insider trading, but instead tipper/tippee or misappropriation liability, where some courts have held additional knowledge elements may not be essential under Section 1348.  *See*, *e.g.*, *United States v. Slawson*, Criminal Case No. 1:14–CR–00186–RWS–JFK, 2014 WL 5804191, at *6 (N.D. Ga. Nov. 7, 2014).

charges are multiplicitous and must be dismissed.  *See United States v. Ortiz*, No.

CR–06–019–TUC–DCB, 2007 WL 1629995, at *3 (D. Ariz. June 4, 2007)

(dismissing a count as multiplicitous); *United States v. Gardner*, 417 F. Supp. 2d

703, 717 (D. Md. 2006) (same); *Butler*, 351 F. Supp. 2d at 132 (same); *accord.*

*Whalen v. United States*, 445 U.S. 684, 694 (1980) (holding that, where proof of

rape was a necessary element of proof of the felony murder, convictions of both

offenses could not satisfy the *Blockburger* test).

Section 1348 was enacted by Congress in the wake of the Enron accounting

fraud scandal to offer prosecutors "enforcement flexibility" to react to "all the

types [of] schemes and frauds which inventive criminals may devise in the future."

*The Corporate And Criminal Fraud Accountability Act of 2002*, S. Rep. No. 107-

146, at *20 (May 6, 2002).  It was not intended to empower the government to

charge one individual for the same conduct in multiple, cumulative offenses.  The

Court should not allow the government to proceed using a multiplicitous

indictment.

## II.   THE INDICTMENT FAILS TO ALLEGE THE ESSENTIAL ELEMENTS OF THE CHARGED OFFENSES

When considering a challenge to the legal sufficiency of an indictment, the

reviewing court must read the indictment as a whole and give it a "common sense

construction," determining its sufficiency from its face.  *See United States v.*

*Schmitz*, 634 F.3d 1247, 1259 (11th Cir. 2011) (citations omitted). The court may also consider inferences reasonably drawn[5] from the facts pled in the indictment, but an indictment that "requires speculation on a fundamental part of the charge is insufficient." *United States v. Bobo*, 344 F.3d 1076, 1084 (11th Cir. 2003).

At a minimum, an indictment must present the essential elements of the charged offense. *Schmitz*, 634 F.3d at 1259. While it is permissible for an indictment to simply "track[] the language of the statute," such an allegation must also "be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense . . . with which he is charged." *Id.* at 1261 (quoting *Bobo*, 344 F.3d at 1083).

_____

[5] Because there is a presumption of innocence in favor of the accused, the strained inferences the Indictment appears to draw from the alleged facts need not, and, indeed, *should not*, be accepted as valid. Rather, the Court should evaluate whether the inferences suggested in the Indictment, when properly balanced against the presumption of innocence Mr. Ying enjoys, weigh equally in favor of innocence as in favor of guilt. *Cf. Cosby v. Jones*, 682 F.2d 1373, 1383 n.21 (11th Cir. 1982); *see also United States v. Newman*, 773 F.3d 438, 451 (2d Cir. 2014), *abrogated on other grounds by Salman v. United States*, 137 S. Ct. 420 (2016); *United States v. Brown*, 459 F.3d 509, 525 (5th Cir. 2006). Indeed, in the civil context, where the burden is lower, "the inference of scienter must be more than merely 'reasonable' or 'permissible' – it must be cogent and compelling, thus strong in light of other explanations." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007). Similarly, in civil enforcement cases, "[c]ourts stress that the SEC may not base insider trading actions on strained inferences and speculation." *SEC v. Truong*, 98 F. Supp. 2d 1086, 1098 (N.D. Cal. 2000).

### A. The Essential Elements Of An Insider Trading Charge Under The "Classical" Theory

As noted earlier, both Section 1348 and Section 10(b) prohibit fraudulent conduct in connection with securities. The "fraud" in an insider trading case "derives from the 'inherent unfairness involved where one takes advantage' of 'information intended to be available only for a corporate purpose and not for the personal benefit of anyone.'" *Dirks v. SEC*, 463 U.S. 646, 654 (1983); *see also O'Hagan*, 521 U.S. at 651-52; *Chiarella*, 445 U.S. at 230.

In the Eleventh Circuit, in order to establish that insider trading is fraudulent, the government must prove that the defendant (1) possessed material nonpublic information and (2) used that information to trade. *See, e.g., U.S. SEC v. Ginsburg*, 362 F.3d 1292, 1297-98 (11th Cir. 2004). These two elements are also required in order to establish that the defendant acted with scienter, which is itself an independent and indispensable element of any fraud charge, including one based on the theory of insider trading. *See Dirks*, 463 U.S. at 663 n.23; *Ginsburg*, 362 F.3d at 1297-98; *SEC v. Adler*, 137 F.3d 1325, 1340 (11th Cir. 1998). The requisite scienter for liability under Section 10(b) and Rule 10b-5 is a "mental state embracing intent to deceive, manipulate, or defraud." *Dirks*, 463 U.S. at 663 n.23 (citation omitted). Similarly, under Section 1348, the government must

demonstrate that a defendant acted with "fraudulent intent." *United States v. Melvin*, 143 F. Supp. 3d 1354, 1371-72 (N.D. Ga. 2015).

In sum, in order for the charges against Mr. Ying to withstand a motion to dismiss, the Indictment must allege that Mr. Ying, acting willfully, that is with the "bad purpose to disobey or disregard the law,"[6] breached a duty of trust and confidence he owed to Equifax by using material nonpublic information he possessed to purchase or sell Equifax securities.

### B.  The Indictment Fails To Allege That Mr. Ying Knowingly Possessed Material Nonpublic Information

The Indictment must be dismissed because it does not specify the material nonpublic information at issue. *See Ginsburg*, 362 F.3d at 1297 (holding that an insider trading charge requires possession of material nonpublic information); *Adler*, 137 F.3d at 1340 (same); *SEC v. Schvacho*, 991 F. Supp. 2d 1284, 1303 (N.D. Ga. 2014) (same).  Count One of the Indictment states only that the "material nonpublic information" on which Mr. Ying purportedly traded "related to the data

---

[6] In a criminal prosecution, the government must also prove that the defendant acted knowingly and willfully.  15 U.S.C. § 77ff(a) (establishing criminal liability for "[a]ny person who willfully violates any provision of" the Exchange Act); 18 U.S.C. § 1348 ("Whoever *knowingly* executes, or attempts to execute . . .") (emphasis added).  According to the Eleventh Circuit's Pattern Jury Instructions, "willfully" means that an act "was committed voluntarily and purposely, with the intent to do something the law forbids; that is, with the bad purpose to disobey or disregard the law."  Eleventh Circuit Pattern Jury Instructions (Criminal Cases), B9.1A (2016).

breach", Indict. ¶ 19, but it does not specify what that information was, and Count Two omits any reference to the data breach.  This failure alone is a sufficient ground for dismissing the Indictment; by not expressly defining the material nonpublic information at issue, the Indictment fails to "sufficiently apprise[ ] the defendant of what he must be prepared to meet."  *Bobo*, 344 F.3d at 1083 (alteration in original) (citation omitted).

Presumably, the government expects Mr. Ying, and this Court, to infer that the material nonpublic information was the existence of a data breach at Equifax. *See* Indict. ¶ 18 (linking the public announcement of the breach to a drop in Equifax's stock price).  However, "[a]n indictment that requires speculation on a fundamental part of the charge is insufficient." *Bobo*, 344 F.3d at 1084.

More importantly, the Indictment also fails to allege facts that establish that Mr. Ying *knew* at the time he traded Equifax securities that the company had suffered a data breach.  Indeed, the few factual allegations that bear on Mr. Ying's knowledge are too scant and conclusory to support any allegation that Mr. Ying knew Equifax had been breached.  The Indictment admits that Mr. Ying was not told that Equifax had been breached prior to his trades and that he was affirmatively lied to by Equifax and told that the breach involved an Equifax customer.  The bulk of the allegations in the Indictment concerning Mr. Ying's

knowledge suggest that Mr. Ying did *not* know that Equifax had been breached at the time he traded his Equifax securities, and a paragraph-by-paragraph analysis of the Indictment makes these deficiencies clear.

*Paragraph 1:*   Paragraph 1 of the Indictment contains generic charging language, not factual allegations pertaining to Mr. Ying's knowledge.

*Paragraphs 2-5:*   Paragraphs 2 through 5 of the Indictment contain background information concerning Equifax, Mr. Ying, and Equifax's internal policies and procedures.  These allegations have nothing to do with the data breach at Equifax or Mr. Ying's knowledge of the data breach.

*Paragraphs 6-8:*   Paragraphs 6 through 8 discuss *Equifax's* discovery and investigation of the data breach, not Mr. Ying's knowledge.  Paragraph 6 identifies the time period during which Equifax's databases were breached.  Paragraphs 7 and 8 allege the date on which the company first discovered the breach and began investigating it.  None of these allegations mentions Mr. Ying, nor do they attribute any knowledge of the alleged facts to him.

*Paragraph 9:*   Paragraph 9 alleges that Mr. Ying was aware that certain administrative credentials were changed on internal Equifax databases.  It does not include any assertions that these changes were related to either the data breach or Equifax's investigation of the breach.   Indeed, there are many reasons why,

separate and apart from a data breach, such changes might be made.  They might be routine changes, or security measures prompted by a breach of one of Equifax's customers.  The existence of administrative credential changes is not material nonpublic information, nor does the mere fact that such changes occurred establish that Mr. Ying knew that there had been a data breach at Equifax.

*Paragraphs 10-11:*  Like Paragraphs 6-8, Paragraphs 10 and 11 concern information that *Equifax*, not Mr. Ying, possessed.  Paragraph 10 identifies when Equifax determined that a data breach had occurred, and Paragraph 11 asserts that Equifax imposed trading restrictions on those Equifax employees who were aware of the breach.  Unlike the allegations in Paragraph 9, there are no allegations in either Paragraph 10 or 11 that Mr. Ying was among the individuals made aware of the breach or that any special trading restriction was communicated to or imposed upon him.  Nor does the Indictment contain any allegation that Mr. Ying was even notified of any special trading restriction.

*Paragraph 12:*  Paragraph 12 explicitly concedes that Mr. Ying "was *not* informed that Equifax had been breached" on August 25, 2017 – three days prior to the date on which he exercised his stock options and traded.  Instead, Mr. Ying was lied to and asked to perform work "portrayed as part of a breach opportunity involving *a potential Equifax customer*."  Indict. ¶ 12 (emphasis added).

15

**Paragraph 13:**  The selectively quoted text messages described in Paragraph 13 do not establish that Mr. Ying understood, was aware, or knew that Equifax had been breached.  The text messages in which Mr. Ying wrote to a colleague saying "[w]e may be the one breached" and "I'm starting to put 2 and 2 together", Indict. ¶ 13, support only a conclusion that, three days prior to exercising his stock options and selling the resulting shares, Mr. Ying speculated that Equifax may have been breached.  Indeed, Mr. Ying's own words confirm that he did *not know* that Equifax had been breached.

**Paragraph 14:**  Paragraph 14 alleges that Mr. Ying performed certain Internet searches on August 28, 2017, related to a prior data breach at another company.  It does not contain any allegations concerning information provided to Mr. Ying about the data breach at Equifax.  Viewed without any context, the searches appear to support an inference that Mr. Ying guessed at the possibility that Equifax had been breached.  However, the Internet searches would have yielded results showing that the other company's stock price had increased on the date referenced in the alleged search inquiry.

**Paragraphs 15-16:**  Paragraphs 15 and 16 allege facts concerning Mr. Ying's exercise of his stock options and sale of the resulting shares on August 28,

2017.  No facts related to the breach at Equifax or Mr. Ying's knowledge of that breach are asserted.

**Paragraphs 17-18:**  Paragraphs 17 and 18 concern events that occurred *after* Mr. Ying exercised his Equifax options and sold the resulting shares.  They have little to no bearing on his knowledge at the time he traded.

**Paragraphs 19-20 & 22:**  These paragraphs contain generic charging language, not factual allegations pertaining to Mr. Ying's knowledge.

Possession of material nonpublic information at the time of a trade is necessary (though not, in and of itself, sufficient) to transform otherwise legal trading by an insider into fraudulent conduct.  *See SEC v. Tex. Gulf Sulphur Co.*, 401 F.2d 833, 848 (2d Cir. 1968) ("An insider is not, of course, always foreclosed from investing in his own company . . .").  Here, the allegations show that Mr. Ying did not know Equifax had been breached, but was instead affirmatively lied to by Equifax.[7]  In short, the Indictment fails to allege facts establishing that Mr. Ying knew material nonpublic information when he exercised his Equifax options and sold the resulting shares.

---

[7] Based on the facts alleged in the Indictment, Mr. Ying cannot fairly be said to have "ha[d] knowledge" or been "conscious" or "cognizant" of material nonpublic information at the time he traded.  *See* Final Rule, Selective Disclosure and Insider Trading, 65 Fed. Reg. 51716, 51727 n.105 (Aug. 24, 2000) (explaining that the word "aware" is not defined in Rule 10b5-1 because it is a "commonly used and well-defined English word, meaning 'having knowledge; conscious; cognizant'").

### C.   The Indictment Fails To Allege That Mr. Ying Used Material Nonpublic Information

The Indictment also fails as a legal matter because it does not allege that Mr. Ying *used* material nonpublic information in exercising his Equifax options and selling the resulting shares.  The Indictment improperly relies on Rule 10b5-1 and its "knowing possession" or "awareness" standard as opposed to alleging use.  That standard, however, is not applicable in the Eleventh Circuit.  Two decades ago, the Eleventh Circuit rejected the "knowing possession" standard for insider trading liability, and held instead that liability for insider trading requires the "use" of material nonpublic information when trading.  *Adler*, 137 F.3d at 1337.  Nor does the Indictment sufficiently allege any facts that indicate Mr. Ying used material nonpublic information at the time he traded.

As noted above, looking to Section 10(b)'s and Rule 10b-5's proscriptions against fraud, manipulation, and deceit, the Eleventh Circuit in *Adler* concluded that the use of material nonpublic information, and not simply the awareness of such information when trading, is necessary to transform otherwise legal trading by an insider into fraudulent conduct.  *Adler*, 137 F.3d at 1333.  The Eleventh Circuit has reaffirmed *Adler*.  *See Fried v. Stiefel Labs., Inc.*, 814 F.3d 1288, 1295 (11th Cir. 2016); *Ginsburg*, 362 F.3d at 1297-98; *see also* Eleventh Circuit Pattern

Jury Instructions (Civil Cases), 6.3.2 (2013) (requiring evidence the defendant "used material, nonpublic information in the purchase or sale of securities").[8]

Unlike the "use" standard, "knowing possession" extends liability beyond acts of fraud, and, therefore, beyond the scope of Section 10(b) and Section 1348. *See Adler*, 137 F.3d at 1338 ("[W]e do not believe that the SEC's knowing possession test would always and inevitably be limited to situations involving fraud."). The Supreme Court has "emphasized this focus on fraud and deception" in decisions concerning insider trading, *id.* at 1338, for the antifraud provisions of the federal securities laws serve as "guarantees that corporate insiders . . . will not benefit personally through fraudulent use of material, nonpublic information." *Chiarella*, 445 U.S. at 230. Section 10(b), the Supreme Court has held, is violated "not when the fiduciary gains the confidential information, but when, without disclosure to his principal, he uses the information to purchase or sell securities." *O'Hagan*, 521 U.S. at 656.

---

[8] To date, the Eleventh Circuit has considered the "use" requirement only in the civil context, and, in that context, has recognized that "a strong inference of use arises when an insider trades while in [knowing] possession of material nonpublic information." *Fried v. Stiefel Labs., Inc.*, 814 F.3d 1288, 1295 (11th Cir. 2016) (citing *SEC v. Adler*, 137 F.3d 1325, 1337 (11th Cir. 1998)). Such an inference is not applicable here, however, because (1) the Indictment fails to allege that Mr. Ying possessed material nonpublic information at the time he traded and (2) such burden shifting is inappropriate in criminal cases. *See United States v. Smith*, 155 F.3d 1051, 1069 (9th Cir. 1998) (rejecting *Adler*'s inference for criminal cases).

Without requiring a causal connection between material nonpublic information and trading, insider trading would, effectively, no longer require proof of fraud, deception, or manipulation.  However, as the Ninth Circuit explained when it embraced the reasoning in *Adler*, "[Section] 10(b) and Rule 10b–5 do not just prohibit certain unspecified acts 'in connection with' the purchase or sale of securities; rather, they prohibit the employment of 'manipulative' and 'deceptive' trading practices in connection with those transactions."[9]  *United States v. Smith*, 155 F.3d 1051, 1068 (9th Cir. 1998).  Similarly, Section 1348 prohibits not just any conduct in connection with securities, but "a scheme or artifice . . . (1) to *defraud* . . . ; or (2) to obtain, by means of *false or fraudulent* pretenses, representations or promises, any money[.]"  18 U.S.C. § 1348 (emphasis added).  It is the use of material nonpublic information in trading that creates a fraud actionable under Section 10(b) and Section 1348.

---

[9] Indeed, other circuits have followed the Eleventh Circuit's lead in applying a "use" standard in insider trading cases, particularly in criminal prosecutions.  *See*, *e.g.*, *Smith*, 155 F.3d at 1068; *United States v. Anderson*, 533 F.3d 623, 630 (8th Cir. 2008).

Even in the Second Circuit, where a "knowing possession" standard has arguably been adopted, jury instructions in criminal cases have consistently required at least *some* showing that material nonpublic information was a "factor" in the defendant's trading decision.  *See, e.g.*, *United States v. Whitman*, 555 F. App'x 98, 107 (2d Cir. 2014); *United States v. Rajaratnam*, 719 F.3d 139, 157 (2d Cir. 2013); *United States v. Royer*, 549 F.3d 886, 899 (2d Cir. 2008).

By citing Rule 10b5-1 and alleging simply that Mr. Ying traded "on the basis of" material nonpublic information, Count Two necessarily relies on the meaning of "on the basis of" expressed in Rule 10b5-1.[10]  Implemented in 2000, Rule 10b5-1 seeks to impose a "knowing possession" or "awareness" standard for insider trading liability.  It purports to define trading "on the basis of" material nonpublic information for purposes of Section 10(b) and Rule 10b-5 as occurring where "the person making the purchase or sale was *aware of* the material nonpublic information when the person made the purchase or sale."  17 C.F.R. § 240.10b5-1(b) (2000) (emphasis added).  This standard is in direct conflict with Eleventh Circuit law and the statutory provision pursuant to which it was enacted.

By its terms, Rule 10b5-1 was intended only to "define[] when a purchase or sale constitutes trading 'on the basis of' material nonpublic information in insider trading cases brought under Section 10(b) of the Act and Rule 10b-5"; the Commission was not seeking to "modify the scope of insider trading law in any other respect."  Prelim. Note, 17 C.F.R. § 240.10b5-1 (2000).  However, by purporting to make unlawful, and considered trading "on the basis of" material nonpublic information, any trading activity that occurs when one is merely "aware" of material nonpublic information, Rule 10b5-1 *necessarily* modifies, and expands

---

[10] Count One does not expressly cite Rule 10b5-1, but it uses its language.

exponentially, the scope of insider trading law.   Through the Rule, the SEC effectively seeks to transform insider trading into a strict liability offense that subjects insiders, among others, to imprisonment for purchasing or selling securities if they are merely *aware of* material nonpublic information.

The SEC's interpretation of "on the basis of" as expressed in Rule 10b5-1 is contrary to the plain language of the statute.   Therefore, it is not due any deference. *See Nat'l Ass'n of State Util. Consumer Advocates v. FCC*, 457 F.3d 1238, 1253 (11th Cir. 2006) ("If the intent of Congress is clear, . . . the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.") (alteration in original) (quoting *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984)).   Section 10(b) speaks "specifically in terms of manipulation and deception," and the Supreme Court has found that "its history reflects no more expansive intent."   *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 214 (1976).   The Commission cannot, by enacting a rule pursuant to Section 10(b), write out the language of Section 10(b) itself.   *See O'Hagan*, 521 U.S. at 651 ("Liability under Rule 10b–5, our precedent indicates, does not extend beyond conduct encompassed by § 10(b)'s prohibition.").   Congress's intent as expressed in the plain language of Section 10(b) is unambiguous; it seeks to proscribe

fraudulent conduct. The *use* of material nonpublic information is what, in the context of insider trading, constitutes "fraud."

Even if the Court were to find Section 10(b) sufficiently ambiguous, thereby satisfying the first step in a *Chevron* analysis, the Commission's interpretation must be rejected as it should only be "given controlling weight" if it is not "arbitrary, capricious, or manifestly contrary to the statute." *Nat'l Ass'n of State Util. Consumer Advocates*, 457 F.3d at 1253 (citation omitted). By eliminating the need to prove that material nonpublic information was used in trading, Rule 10b5-1 reflects an interpretation that is "manifestly contrary" to Section 10(b). Given the Supreme Court's repeated admonition in insider trading cases that Section 10(b) and, therefore, Rule 10b-5 capture only *fraudulent* conduct, it would be inappropriate to extend their reach to conduct that does not constitute a "manipulative or deceptive device" used or employed in connection with the purchase or sale of securities. *See* 15 U.S.C. § 78j(b); *O'Hagan*, 521 U.S. at 655 ("[Section] 10(b) is not an all-purpose breach of fiduciary duty ban; rather, it trains on conduct involving manipulation or deception."); *Dirks*, 463 U.S. at 654; *Chiarella*, 445 U.S. at 234-35.

Rejecting *Chevron* deference is critical in the context of criminal prosecutions. Allowing mere "awareness" of material nonpublic information at the

time of trading to suffice in imposing criminal liability under Section 10(b) would transform otherwise legal conduct into criminal conduct without legislative action, a prerequisite for the creation of criminal offenses. *See Whitman v. United States*, 135 S. Ct. 352, 353 (2014) (mem.) (Scalia, J., concurring in denial of certiorari) (discussing Rule 10b5-1 and stating that deference to an agency in interpretations of a law with criminal enforcement implications "collide[s] with the norm that legislatures, not executive officers, define crimes"). Even assuming that Section 10(b) were ambiguous (which it is not), the rule of lenity "requires interpreters to resolve ambiguity in criminal laws in favor of defendants," and, thus, counsels against deference to an executive agency in the interpretation of ambiguous statutory provisions and judicial precedent. *Id.*

Here, even if one assumes that the Indictment's direct reliance on Rule 10b5-1 was meaningless and that its statement that Mr. Ying traded "on the basis of" material nonpublic information sufficiently tracks the "statutory" language of the charged offenses, the factual allegations included in the Indictment cannot lead one to reasonably infer that Mr. Ying used material nonpublic information in trading. First, as described more fully in Section II.B, the Indictment fails to adequately allege that Mr. Ying even *knew* any material nonpublic information at the time he

exercised his Equifax options and traded.  One cannot infer that he *used* such information when he did not even *know* it.

Second, the Internet searches alleged in the Indictment belie any reasonable inference that Mr. Ying used his (nonexistent) knowledge that Equifax had been the victim of a data breach in his decision to trade.  Mr. Ying's alleged search for "experian stock price 9/15/2015," Indict. ¶ 14(b), would have revealed that Experian, a credit bureau that experienced a breach on September 15, 2015, saw an *increase* in its stock price on that date.  If he was using the fact that Equifax had similarly been breached in his decision to trade, those search results would have caused Mr. Ying *to purchase* Equifax securities – not to exercise his options and sell the resulting shares.  Rather than indicating that Mr. Ying was using material nonpublic information to trade, Mr. Ying's browser history tends to suggest that he traded for reasons independent of any potential impact the alleged material nonpublic information would have on Equifax's stock price.

## CONCLUSION

For the foregoing reasons, Mr. Ying respectfully requests that the Court grant this Motion and dismiss the Indictment.

Respectfully submitted, this 11th day of June, 2018.

/s/ R. Joseph Burby, IV
R. Joseph Burby, IV (Ga. Bar No. 094503)
Elyse K. Yang (Ga. Bar No. 939395)
**BRYAN CAVE LEIGHTON
PAISNER LLP**
One Atlantic Center - Fourteenth Floor
1201 W. Peachtree Street, NW
Atlanta, GA  30309-3471
Telephone:  (404) 572-6600
Facsimile:  (404) 572-6999
Email:       joey.burby@bclplaw.com
Email:       elyse.yang@bclplaw.com


Douglas Koff (*admitted pro hac vice*)
Craig Warkol (*admitted pro hac vice*)
Kelly Koscuiszka (*admitted pro hac vice*)
**SCHULTE ROTH & ZABEL LLP**
919 Third Avenue
New York, NY  10022
Telephone:  (212) 756-2000
Facsimile:  (212) 593-5955
Email:       douglas.koff@srz.com
Email:       craig.warkol@srz.com
Email:       kelly.koscuiszka@srz.com


*Counsel for Defendant Jun Ying*

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify, pursuant to LR 7.1D of the Northern District of Georgia, that the foregoing filing complies with the font and point selections approved by LR 5.1C.

Dated:  June 11, 2018

> */s/ R. Joseph Burby, IV*
> R. Joseph Burby, IV (Ga. Bar No. 094503)
> **BRYAN CAVE LEIGHTON**
> **PAISNER LLP**
> One Atlantic Center - Fourteenth Floor
> 1201 W. Peachtree Street, NW
> Atlanta, GA  30309-3471
> Telephone:  (404) 572-6600
> Facsimile:   (404) 572-6999
> Email:        joey.burby@bclplaw.com
>
> *Counsel for Defendant Jun Ying*

27

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | CRIMINAL ACTION |
| | ) | |
| v. | ) | NO.: 1:18-CR-074-WSD/RGV |
| | ) | |
| JUN YING, | ) | |
| Defendant. | ) | |
| | ) | |

## CERTIFICATE OF SERVICE

This is to certify that I have this 11th day of June 2018 electronically filed the foregoing **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE INDICTMENT** with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to all attorneys of record.

/s/ R. Joseph Burby, IV
R. Joseph Burby, IV (Ga. Bar No. 094503)
**BRYAN CAVE LEIGHTON PAISNER LLP**
One Atlantic Center - Fourteenth Floor
1201 W. Peachtree Street, NW
Atlanta, GA  30309-3471
Telephone:  (404) 572-6600
Facsimile:  (404) 572-6999
Email:       joey.burby@bclplaw.com

*Counsel for Defendant Jun Ying*

11793952

28

# EXHIBIT

# A

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | CRIMINAL ACTION |
| | ) | |
| v. | ) | NO.: 1:18-CR-074-WSD/RGV |
| | ) | |
| JUN YING, | ) | |
| Defendant. | ) | |
| | ) | |

## **[PROPOSED] ORDER**

The Court having read and considered Defendant's Motion to Dismiss the Indictment and Memorandum of Law in Support of Defendant's Motion to Dismiss the Indictment, and for good cause shown, it is HEREBY ORDERED that said Motion is GRANTED and the Indictment is DISMISSED.

SO ORDERED this _____ day of _____, 2018.

_____
Judge William S. Duffey Jr.
United States District Judge

11793049