# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

UNITED STATES OF AMERICA

v.

JUN YING

CRIMINAL CASE NO.

1:18-cr-00074-AT-RGV

## MAGISTRATE JUDGE'S FINAL ORDER AND REPORT AND RECOMMENDATION ON DEFENDANT'S PRETRIAL MOTIONS

Defendant Jun Ying ("Ying") is charged in a two-count indictment with securities fraud, in violation of 18 U.S.C. § 1348, 15 U.S.C. §§ 78j(b) and 78ff, and 17 C.F.R. §§ 240.10b-5 and 240.10b5-1. [Doc. 1].[1] Ying has filed a motion to dismiss the indictment, [Doc. 35], and a motion for a bill of particulars, [Doc. 36], both of which the government opposes, [Docs. 46 & 48]. Ying has filed a reply in support of both of his motions, [Docs. 53 & 54], and for the reasons that follow, Ying's motion for bill of particulars, [Doc. 36], is **DENIED**, and it is **RECOMMENDED** that his motion to dismiss the indictment, [Doc. 35], be **DENIED**.

---

[1] The indictment also contains a forfeiture provision. See [Doc. 1 at 6-7]. The listed document and page numbers in citations to the record refer to the document and page numbers shown on the Adobe file reader linked to the Court's electronic filing database, CM/ECF.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

On March 13, 2018, a grand jury returned an indictment against Ying, charging him with two counts of securities fraud and insider trading, in violation of 18 U.S.C. § 1348, 15 U.S.C. §§ 78j(b) and 78ff, and 17 C.F.R. §§ 240.10b-5 and 240.10b5-1.  [Doc. 1].  According to the indictment, Ying was the Chief Information Officer ("CIO") for Equifax Inc.'s ("Equifax") United States Information Solutions business unit.[2]  [Id. ¶ 3].  The indictment alleges that from mid-May 2017 through July 2017, unknown individuals were able to hack into Equifax's databases and obtain personal identifying information of approximately 145 million people, and on July 29, 2017, Equifax discovered the network security breach and began an investigation as to the scope of the breach and to plan for remedial efforts.  [Id. ¶¶ 6-8].

From August 12, 2017, through August 15, 2017, Equifax changed internal administrative credentials for many of its internal databases, and Ying was aware of these changes.  [Id. ¶ 9].  By August 15, 2017, Equifax concluded that consumers' personally identifiable information was likely taken as a result of the data breach,

---

[2] Equifax is a consumer reporting agency whose stock is publicly traded on the New York Stock Exchange under the ticker symbol "EFX."  [Doc. 1 ¶ 2].  Equifax employees, including Ying, were required to abide by its Insider Trading Policy, which prohibited trading of Equifax securities if the employee was aware of material nonpublic information.  [Id. ¶ 4].  Equifax reminded Ying of this policy in an email sent to him on July 25, 2017.  [Id. ¶ 5].

and on this same day, Equifax imposed a special trading ban for its employees who were aware of the data breach.  [Id. ¶¶ 10-11].  On August 25, 2017, Ying, and several other employees who reported to Ying, were asked to assist in responding to the breach, but the breach was presented as a breach opportunity involving a potential Equifax customer rather than a breach of Equifax's databases.  [Id. ¶ 12].  However, on this same day, Ying sent text messages to W.M. that stated, "Sounds bad.  We may be the one breached" and "I'm starting to put 2 and 2 together."  [Id. ¶ 13 (internal marks omitted)].

On August 28, 2017, Ying conducted several Internet searches for information related to the value of the stock price of Experian, another consumer reporting agency and competitor to Equifax, following an Experian data breach in 2015.  [Id. ¶ 14].  Less than an hour after conducting these Internet searches, Ying, who held stock options for Equifax securities in a UBS Financial Services account ending in 24 EF, accessed the UBS website; exercised all of his available stock options in the account ending in 24 EF, which resulted in him receiving 6,815 shares of Equifax stock in the same account; and then sold all of these shares for a profit of over $480,000.  [Id. ¶¶ 15-16].  On the following day, Ying sent M.D. a text message that said, "I think some big media announcement is coming about us" and "I think it might be bad."  [Id. ¶ 17 (internal marks omitted)].  Subsequently, on September 7,

2017, following the close of the stock market that day, Equifax publicly disclosed the data breach, and the following day, Equifax's stock dropped in price. [Id. ¶ 18]. The indictment alleges that Ying "traded in Equifax securities on the basis of material nonpublic information related to the data breach, and thereby earned illegal profits and illegally avoided losses" and that this activity was in violation of 18 U.S.C. § 1348, 15 U.S.C. §§ 78j(b) and 78ff, and 17 C.F.R. §§ 240.10b-5 and 240.10b5-1. [Id. ¶¶ 19-20, 22]. Ying has filed two motions in relation to the instant indictment, see [Docs. 35 & 36], and after having been fully briefed, the pending motions are ripe for ruling.

## II.  DISCUSSION

### A.  Motion to Dismiss the Indictment, [Doc. 35]

Ying is charged with two counts of illegal insider trading, in violation of 18 U.S.C. § 1348 in Count One, and in violation of 15 U.S.C. §§ 78j(b) and 78ff in Count Two.  [Doc. 1].  Ying moves to dismiss these charges, arguing that the indictment is multiplicitous and fails to allege the essential elements of the charged offenses. [Doc. 35-1]; see also [Doc. 53].  In response, the government maintains that the indictment is not multiplicitous because each count requires an element of proof that the other count does not require and that the indictment adequately alleges the

4

charged offenses.  [Doc. 46].  For the reasons that follow, the Court agrees with the government.

> **1.**     *Multiplicity*

"An indictment is multiplicitous if it charges a single offense in more than one count."  United States v. Williams, 527 F.3d 1235, 1241 (11th Cir. 2008) (citations omitted).  "A multiplicitous indictment not only subjects the defendant to numerous sentences for one offense, but also prejudice[s] the defendant and confuse[s] the jury by suggesting that not one but several crimes have been committed."  Id. (alterations in original) (footnote, citation, and internal marks omitted).  Therefore, "[a] multiplicitous indictment [] violates the principles of double jeopardy because it gives the jury numerous opportunities to convict the defendant for the same offense."  Id.  Thus, "[b]ecause a multiplicitous indictment involves double jeopardy issues, multiplicity and double jeopardy challenges are typically evaluated under the same standards."  United States v. Woods, 730 F. Supp. 2d 1354, 1376 (S.D. Ga. 2010), aff'd, 684 F.3d 1045 (11th Cir. 2012) (per curiam).  "Accordingly, the test enunciated in [Blockburger v. United States, 284 U.S. 299 (1932),] used to evaluate double jeopardy challenges . . . is also used to determine whether an indictment is multiplicitous, verifying that each count requires an element of proof that the other counts do not require."  Id. (citation and internal marks omitted).

"Under *Blockburger*[,] the test to be applied to determine whether two statutory provisions prohibiting the same conduct violate the Double Jeopardy Clause, or whether each count of the indictment may result in a conviction for the same offense, is whether each provision [or count] requires proof of a fact which the other does not." Id. (last alteration in original) (citation and internal marks omitted). Pursuant to this test, "the focus is on the proof necessary to establish the statutory elements of the offense, not the actual evidence presented at trial." Id. (citation omitted).  Ying asserts that the "elements of proof for [18 U.S.C. § 1348 and 15 U.S.C. §§ 78j and 78ff] are identical," see [Doc. 35-1 at 13-15], but this contention is incorrect.  Count One of the indictment charges a violation of 18 U.S.C. § 1348, which provides:

> Whoever knowingly executes, or attempts to execute, a scheme or artifice–
>
> > (1) to defraud any person in connection with . . . any security of an issuer with a class of securities registered under section 12 of the Securities Exchange Act of 1934 (15 U.S.C. 78l) or that is required to file reports under section 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. 78o(d)); or
> >
> > (2) to obtain, by means of false or fraudulent pretenses, representations, or promises, any money or property in connection with the purchase or sale of . . . any security of an issuer with a class of securities registered under section 12 of the Securities Exchange Act of 1934 (15 U.S.C. 78l) or that is required to file reports under section 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. 78o(d));

shall be fined under this title, or imprisoned not more than 25 years, or both.

18 U.S.C. § 1348(1)-(2).  Count Two of the indictment charges a violation of 15 U.S.C. § 78j(b), which makes it a crime for a person to directly or indirectly, "by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange," to:

> use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, or any securities-based swap agreement any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j(b) (footnote omitted).  And, 15 U.S.C. § 78ff provides, in relevant part, that "[a]ny person who willfully violates any provision of this chapter . . . or any rule of regulation" pursuant to the Securities Exchange Act of 1934 "shall upon conviction be fined not more than $5,000,000, or imprisoned not more than 20 years[.]"  15 U.S.C. § 78ff(a).

Thus, § 1348, as charged in Count One of the indictment, requires that the scheme be in connection with any security of an issuer with a class of securities registered with the SEC or required to file reports with the SEC, and the elements the government must prove under § 1348(1) are: (1) fraudulent intent, (2) a scheme or artifice to defraud, and (3) a nexus with a security, United States v. Melvin, 143

F. Supp. 3d 1354, 1371 (N.D. Ga. 2015) (citation omitted), whereas under § 1348(2), the government must prove that Ying "executed: (1) a scheme or artifice; (2) to obtain, by means of false or fraudulent pretenses, representations, or promises, any money or property; while possessing (3) fraudulent intent," id. at 1372 (quoting United States v. Hatfield, 724 F. Supp. 2d 321, 324 (E.D.N.Y. 2010)). The statute does not require proof that Ying acted willfully, only knowingly. United States v. Hussain, Case No. 16-cr-00462-CRB-1, 2017 WL 4865562, *8 (N.D. Cal. Oct. 27, 2017) ("18 U.S.C. § 1348, unlike Exchange Act § 10(b), does not require purpose or willfulness").

In contrast, Count Two charges a violation of §§ 78j(b) and 78ff, which require proof of the use of an instrumentality of interstate commerce in connection with a purchase or sale of any security, registered or not, and that Ying acted willfully. 15 U.S.C. §§ 78j(b) and 78ff. Moreover, "securities fraud under 15 U.S.C. § 78j(b) and 78ff, [] do[es] not have a money or property element," but "securities fraud under 18 U.S.C. § 1348 . . . does require a scheme to obtain money or property, as do mail fraud and wire fraud." Stinn v. United States, 856 F. Supp. 2d 531, 538 n.6 (E.D.N.Y. 2012), aff'd, 515 F. App'x 4 (2d Cir. 2013). Although Ying asserts that these are "distinctions without a difference," [Doc. 53 at 17], Congress enacted Section 1348 to create a broad-reaching criminal securities fraud statute "patterned on 18 U.S.C.

§§ 1341, 1343 and 1344," United States v. Harris, Criminal Case No. 1:09–CR–0406–TCB–JFK, 2010 WL 4962981, at *3 (N.D. Ga. Oct. 22, 2010), adopted by 2010 WL 4967821, at *5 (N.D. Ga. Dec. 1, 2010).  Although the evidence may be the same to prove the violations asserted in each count, in applying the Blockburger test, the focus is on the statutory elements of the offense, not the specific facts presented by the government to prove the offenses.  See Albernaz v. United States, 450 U.S. 333, 338 (1981).  Here, each statutory provision requires proof of an additional fact not required by the other.

While the Court finds that the challenged counts are not multiplicitous for the reasons discussed, as well as the arguments advanced by the government in its opposition, see [Doc. 46 at 3-9], even if "[a]n indictment . . . charging the same offense in more than one count is multiplicitous," it is "not fatal and does not require dismissal of the indictment," United States v. Siegelman, 2:05 CR 119 MEF, 2006 WL 752951, at *3 (M.D. Ala. Mar. 22, 2006) (alterations in original) (footnote, citation, and internal marks omitted).  Indeed, "there are less severe remedies available to alleviate potential prejudice," including "by offering appropriate instructions to the jury."  Id. (citation omitted); see also United States v. Pefanis, Criminal Action No. 1:10–CR–0513–RWS–CCH, 2011 WL 1134310, at *3 (N.D. Ga. Mar. 1, 2011), adopted by 2011 WL 1113954, at *1 (N.D. Ga. Mar. 25, 2011) (citation omitted).  In fact,

"should the evidence at trial demonstrate that the charges were improperly multiplied, the trial court can still remedy any violation by consolidating the counts or requiring dismissal," and, "even after a verdict, any error may be remedied by vacating multiplicitous convictions and any concurrent convictions based upon those convictions." <u>United States v. Ford</u>, Criminal Action No. 1:12–CR–297–TWT–ECS–1, 2013 WL 1337130, at *2 n.3 (N.D. Ga. Mar. 5, 2013), adopted by 2013 WL 1320739, at *1 (N.D. Ga. Mar. 29, 2013), <u>aff'd</u>, 784 F.3d 1386 (11th Cir. 2015) (citations omitted); <u>see also</u> <u>United States v. Bobo</u>, No. CRA 1:06CR0172-02 TW, 2007 WL 962978, at *4 (N.D. Ga. Feb. 20, 2007), adopted by 2007 WL 9676896, at *1 (N.D. Ga. Mar. 23, 2007).  Accordingly, Ying's motion to dismiss the indictment on this basis is due to be denied.

## 2. *Failure to Allege a Crime*

Ying also moves to dismiss the indictment for failure to allege essential elements of the crimes charged, [Doc. 35-1 at 15-31], which the government opposes, [Doc. 46 at 9-17].  Specifically, Ying contends that the indictment should be dismissed because it never "identif[ies] what the [material nonpublic information] is and also fails to sufficiently allege [his] awareness or knowledge of such information," but "[i]nstead, the [i]ndictment offers a conclusory allegation that [he] possessed [material nonpublic information] at the time of his securities transactions

10

without sufficiently stating the facts and circumstances which support that allegation as to what [he] knew." [Doc. 53 at 6-7 (footnote omitted)]. Ying further contends that the indictment "fails as a legal matter because it does not allege that [he] used material nonpublic information in exercising his Equifax options and selling the resulting shares." [Doc. 35-1 at 24 (emphasis omitted)].

"'An indictment is valid if it contains the elements of the offense intended to be charged.'" United States v. Honeycutt, Criminal Action No. 2:12–CR–00022–RWS, 2014 WL 2003029, at *4 (N.D. Ga. May 14, 2014), adopted at *1 (quoting United States v. Williams, 181 F. App'x 945, 949 (11th Cir. 2006) (per curiam) (unpublished)). "An indictment is sufficient if it: (1) presents the essential elements of the charged offense, (2) notifies the accused of the charges to be defended against, and (3) enables the accused to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense."[3] United States v. Aydin, Criminal Case No.

---

[3] "[I]f the indictment tracks the language of the statute, it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged." United States v. Slawson, Criminal Case No. 1:14–CR–00186–RWS–JFK, 2014 WL 5804191, at *5 (N.D. Ga. Nov. 7, 2014), adopted by 2014 WL 6990307, at *1 (N.D. Ga. Dec. 10, 2014) (citations and internal marks omitted). And, "[i]n judging the sufficiency of an indictment, courts are cautioned to use a broad and enlightened standpoint of common sense and right reason rather than [a] narrow standpoint of petty preciosity, pettifogging, technicality or hair splitting fault finding." Id. (second alteration in original) (citation and internal

1:12–CR–221–2–ODE–AJB, 2015 WL 927666, at *7 (N.D. Ga. Mar. 3, 2015), adopted at *5 (citations and internal marks omitted); see also Fed. R. Crim. P. 7(c)(1) ("The indictment . . . must be a plain, concise, and definite written statement of the essential facts constituting the offense charged[.]").  "'In ruling on a motion to dismiss for failure to state an offense, a district court is limited to reviewing the face of the indictment, and more specifically, the language used to charge the crimes.'" Honeycutt, 2014 WL 2003029, at *4 (emphasis omitted) (quoting United States v. Sharpe, 438 F.3d 1257, 1263 (11th Cir. 2006)); see also United States v. Kopp, Criminal Action No. 1:12–CR–0269–RWS, 2014 WL 2154199, at *4 (N.D. Ga. May 21, 2014), adopted at *1, aff'd, 778 F.3d 986 (11th Cir. 2015) (alteration in original) (citation and internal marks omitted) ("It is well-settled that a court may not dismiss an indictment . . . on a determination of facts that should have been developed at trial").

The classical theory of insider trading alleged in the indictment "prohibits a 'corporate insider' (e.g., directors, officers, employees) from trading on material nonpublic information obtained from his position within the organization without disclosing the information." U.S. Sec. & Exch. Comm'n v. Melvin, CIVIL ACTION NO. 1:12-CV-2984-CAP, 2013 WL 12062834, at *2 (N.D. Ga. June 26, 2013) (citations

_____

marks omitted).

omitted).  "Pursuant to the traditional theory, an insider violates § 10(b) and Rule 10b–5 when he purchases or sells shares in a company he owns or acts as an agent of, based on material, nonpublic information." United States v. Corbin, 729 F. Supp. 2d 607, 612–13 (S.D.N.Y. 2010) (footnote and citation omitted). "Trading on the inside information constitutes a 'deceptive device' under § 10(b) and Rule 10b–5 because  a relationship of trust and confidence [exists] between the shareholders of a corporation and those insiders who have obtained confidential information by reason of their position with that corporation." Id. (alteration in original) (citation and internal marks omitted).  Thus, in order to establish insider trading, the government must prove that Ying possessed material nonpublic information and that he used that information to trade.  See U.S. S.E.C. v. Ginsburg, 362 F.3d 1292, 1297 (11th Cir. 2004).

The indictment alleges that after Equifax concluded on August 15, 2017, that consumers' personally identifiable information was likely taken as a result of a data breach, Ying, and several other employees who reported to Ying, were asked to assist in responding to the breach on August 25, 2017, but the breach was presented as a breach opportunity involving a potential Equifax customer rather than a breach of Equifax's databases. [Doc. 1 ¶¶ 10-12].  However, on this same day, Ying sent text messages to W.M. stating, "Sounds bad.  We may be the one breached" and "I'm

starting to put 2 and 2 together." [Id. ¶ 13 (internal marks omitted)]. Thereafter, on August 28, 2017, Ying conducted several Internet searches for information related to the value of the stock price of Experian, another consumer reporting agency and competitor to Equifax, following an Experian data breach in 2015, [id. ¶ 14], and less than an hour later, he exercised all of his available Equifax stock options and sold all of the shares for a profit of over $480,000, [id. ¶¶ 15-16]. On the following day, Ying sent M.D. a text message, stating, "I think some big media announcement is coming about us" and "I think it might be bad, [id. ¶ 17 (internal marks omitted)], and on September 7, 2017, following the close of the stock market that day, Equifax publicly disclosed the data breach, resulting in a decline in Equifax's stock price, [id. ¶ 18]. The indictment specifically alleges that Ying "traded in Equifax securities on the basis of material nonpublic information related to the data breach, and thereby earned illegal profits and illegally avoided losses" and that this activity was in violation of 18 U.S.C. § 1348, 15 U.S.C. §§ 78j(b) and 78ff, and 17 C.F.R. §§ 240.10b-5 and 240.10b5-1. [Id. ¶¶ 19-20, 22].

Ying asserts that the indictment "fails to specify the [material nonpublic information] that he allegedly possessed," [Doc. 53 at 7], but the indictment indicates that the material nonpublic information was the Equifax data breach, [Doc. 1 ¶ 19].[4]

_____

[4] Indeed, as discussed hereinafter, in his reply in support of his motion for a bill of particulars, Ying acknowledges that it is clear that the Equifax data breach is

14

Ying's argument that the "allegations in the [i]ndictment do not support an inference that [he] knowingly possessed any [material nonpublic information] at the time of his securities transactions," [Doc. 53 at 8 (citation omitted)], is likewise flawed. While the indictment alleges that Ying was not directly informed of the Equifax data breach prior to trading his shares of Equifax stock, it does allege, as the government points out, that he "inferred it from the information he did receive from Equifax" and pieced it together. [Doc. 46 at 14 (citing United States v. Mylett, 97 F.3d 663, 668 (2d Cir. 1996) (upholding criminal conviction for insider trading where defendant "was never told about the acquisition and did no more than piece together evidence obtained while working for" the acquirer))]. "Unlike the typical insider trading case, [Ying] is not alleged to have been . . . directly informed of the[] [Equifax data breach]," but "[i]nstead, [he] is alleged to have pieced together for himself what was occurring based on information that was available to him as an [Equifax] employee," which "is a cognizable theory" as "it is well established that a defendant can be held liable for insider trading when he . . . obtains and acts on pieces of information, which, 'piece[d] together' constitute material nonpublic information." S.E.C. v. Steffes, 805 F. Supp. 2d 601, 610 (N.D. Ill. 2011) (last alteration in original) (footnotes and citations omitted). In the present case, the indictment alleges what material

_____

the material nonpublic information. [Doc. 54 at 10].

nonpublic information Ying is alleged to have possessed, as well as when he possessed it, and that he "traded [his] Equifax securities on the basis of material nonpublic information related to the data breach." [Doc. 1 ¶¶ 19-20, 22]. Indeed, "much of [Ying's] [m]otion [to dismiss] . . . challenge[s] the sufficiency of the government's evidence for proving an element of a charged offense," but these "challenges . . . are not appropriate for this [m]otion[.]" United States v. Litvak, No. 3:13–CR–19 (JCH), 2013 WL 5740891, at *5 (D. Conn. Oct. 21, 2013) (citations omitted).

Ying also argues that the indictment "fails as a legal matter because it does not allege that [he] used material nonpublic information in exercising his Equifax options and selling the resulting shares." [Doc. 35-1 at 24 (emphasis omitted)]. In particular, Ying acknowledges that the indictment alleges that he "traded . . . on the basis of material nonpublic information related to the data breach," [Doc. 1 ¶ 19], but he contends that the "factual allegations included in the [i]ndictment cannot lead one to reasonably infer that [he] used material nonpublic information in trading," [Doc. 35-1 at 30].[5] While the indictment does not include the term "used," it instead

_____

[5] Ying also argues that the indictment "improperly relies on Rule 10b5-1 and its 'knowing possession' or 'awareness' standard as opposed to alleging use," and he asserts that "the Eleventh Circuit rejected the 'knowing possession' standard for insider trading liability, and held instead that liability for insider trading requires the 'use' of material nonpublic information when trading." [Doc. 35-1 at 24 (citing SEC v. Adler, 137 F.3d 1325, 1340 (11th Cir. 1998))]. Ying notes that "the Eleventh

alleges that Ying "traded . . . on the basis of material nonpublic information," [Doc. 1 ¶ 19], and "in considering the sufficiency of an indictment, it is well settled that an indictment need not be drafted in the precise terms of the statute, but that the indictment is sufficient if it gives the defendant[] notice of the offense . . . charged and permits an accurate determination of the extent to which [the defendant] may plead former acquittal or conviction if future prosecutions are brought against [him]," and here, "[t]he allegations relevant to the charged offenses in . . . the indictment clearly fulfill this standard," United States v. Tallant, 407 F. Supp. 878, 886 (N.D. Ga. 1975) (second alteration in original) (citation omitted); see also United States v. deVegter, 198 F.3d 1324, 1330 (11th Cir. 1999) (citations omitted) ("Linguistic precision is not required in an indictment," but "[i]nstead, an indictment may be short and simple" and "its allegations are sufficient if they include all elements of the offense and briefly describe the facts of the commission of the offense."). Thus, "the essential elements of the charged crime . . . are pled in the indictment," Slawson, 2014 WL 5804191, at *7 (citations omitted), and the pending motion to dismiss for failure to allege a crime, [Doc. 35], is due to be denied.

---

Circuit has considered the 'use' requirement only in the civil context," [id. at 25 n.8], and since the government acknowledges for purposes of the pending motion that the "used" standard applies in this criminal prosecution, [Doc. 46 at 16 n.2], and the indictment adequately alleges that Ying used the material nonpublic information to trade, the Court need not further address his contentions concerning the Rule 10b5-1 standard.

## B.   <u>Motion for Bill of Particulars, [Doc. 36]</u>

Ying seeks a bill of particulars, requesting that the government identify "the specific material nonpublic information on the basis of which [he] allegedly traded and [] the specific facts that establish that [he] knowingly possessed such information." [Doc. 36 at 11].  The government responds that the "[i]ndictment and discovery more than adequately inform Ying of the charges in sufficient detail to enable adequate defense preparation, minimize surprise at trial, and allow him to plead double jeopardy" and that the "type of minute evidentiary detail that Ying seeks is not the proper function of a bill of particulars." [Doc. 48 at 1].[6]  In his reply,

---

[6] In addition to the allegations in the indictment, the government points out that it produced "hundreds of thousands of documents, as well as audio recordings of all interviews conducted with potential witnesses–some of which are even transcribed–discussing those witnesses' conversations with Ying and documents related to Ying, and what they understood about the Equifax data breach." [Doc. 48 at 3].  The government also asserts that Ying "agreed to have his testimony taken by the U.S. Securities and Exchange Commission ('SEC') prior to [the] indictment," that he "was exhaustively probed on every aspect of his knowledge regarding the Equifax data breach, including the 'material nonpublic information' to which he was privy, and was shown numerous exhibits, including emails and text messages, that detailed his knowledge about the data breach and the conclusions he drew about its implications." [<u>Id.</u>].  The government further asserts that the SEC filed a civil complaint against Ying "alleging civil violations identical to the criminal violations alleged here" and that the "19-page complaint meticulously details the role Ying played in responding to the data breach and the specific material nonpublic information with which he was entrusted." [<u>Id.</u> at 3-4 (citation omitted)]; <u>see also</u> [Doc. 48-1].  Therefore, the government maintains that "Ying's demand for further particularity boils down to a plea for [its] playbook for trial," which "run[s] counter to the limited purpose and application of a bill of particulars[.]" [Doc. 48 at 4].

Ying asserts that "any fair reading of the government's briefs opposing both this [m]otion and [his] [m]otion to [d]ismiss the [i]ndictment reveals that the government has now provided the requested information," yet he still maintains that "in order for [him] to effectively prepare for trial, the government's statements must be memorialized in a bill of particulars such that any changes to the government's expressed positions are made consistent with Rule 7(f) of the Federal Rules of Criminal Procedure." [Doc. 54 at 2]. For the reasons that follow, Ying's motion for a bill of particulars, [Doc. 36], is **DENIED**.

Rule 7(f) of the Federal Rules of Criminal Procedure provides that the Court "may direct the government to file a bill of particulars." Fed. R. Crim. P. 7(f). "The purpose of a true bill of particulars is threefold: 'to inform the defendant of the charge against him with sufficient precision to allow him to prepare his defense, to minimize surprise at trial, and to enable him to plead double jeopardy in the event of a later prosecution for the same offense.'" United States v. Reddy, Criminal Action File No. 1:09-CR-0483-ODE/AJB, 2010 WL 3210842, at *5 (N.D. Ga. Apr. 5, 2010), adopted as modified by 2010 WL 3211029, at *1 (N.D. Ga. Aug. 11, 2010) (quoting United States v. Cole, 755 F.2d 748, 760 (11th Cir. 1985)); see also United States v. Colson, 662 F.2d 1389, 1391 (11th Cir. 1981); United States v. Zellner, Criminal Indictment No. 1:09-CR-320-TCB-GGB, 2011 WL 530718, at *9 (N.D. Ga.

19

Jan. 14, 2011), adopted by United States v. Chester, Criminal Action File No. 1:09-cr-320-TCB-GGB, 2011 WL 529952, at *1 (N.D. Ga. Feb. 4, 2011). Generalized discovery is not a valid reason for seeking a bill of particulars, Colson, 662 F.2d at 1391; United States v. Davis, 582 F.2d 947, 951 (5th Cir. 1978), and "[a] bill of particulars may not be used for the purpose of obtaining detailed disclosure of the government's case or evidence in advance of trial," Zellner, 2011 WL 530718, at *9 (citation omitted). That is, the "crucial question is whether the information sought is necessary, not whether it is helpful." United States v. Calhelha, 456 F. Supp. 2d 350, 365 (D. Conn. 2006) (citations and internal marks omitted). Further, a defendant is not entitled to a bill of particulars describing information which is already evident from other sources, such as elsewhere in the indictment or in discovery. United States v. Rosenthal, 793 F.2d 1214, 1227 (11th Cir. 1986), modified on other grounds by 801 F.2d 378 (11th Cir. 1986); see also Reddy, 2010 WL 3210842, at *5.

Ying has failed to specify how the additional details he seeks are necessary to enable him to prepare his defense, avoid surprise, or plead double jeopardy in a subsequent proceeding. Moreover, the government represents that it has provided Ying with discovery that well exceeds the scope of its discovery obligation, [Doc. 48 at 3], and Ying concedes that the government has provided the requested information, [Doc. 54 at 2]. Despite Ying's argument that he still needs a

20

memorialized statement from the government in order to effectively prepare for trial, [id. at 2, 11], a "defendant is not entitled to a bill of particulars with respect to information which is already available through other sources," United States v. Baitcher, Criminal Action File No. 1:11–CR–536–SCJ–AJB, 2013 WL 1501462, at *2 (N.D. Ga. Mar. 22, 2013), adopted by 2013 WL 1501454, at *1 (N.D. Ga. Apr. 11, 2013) (citations and internal marks omitted); see also United States v. Mosquera-Murillo, 153 F. Supp. 3d 130, 147–48 (D.D.C. 2015) (citation omitted) (finding that an "indictment's failure to detail the government's case against the defendants alone does not trigger a requirement for the government to produce a bill of particulars so long as the information requested by the defendants has been made available in another form, including in the government's responses to this and other defense motions" and that the "government's voluminous discovery to the defendants, as well as the additional information provided through the government's filings providing additional clarity as to [the] government's specific allegations . . . provides sufficient information to [] each category of information sought in the requested bill of particulars").  Furthermore, when particulars are sought with respect to "events in which one or more of the defendants participated, or which occurred in one or more of the defendants' presence[,] [t]he Eleventh Circuit has held that this sort of information need not be furnished in a bill of particulars."  United States v.

Williams, 113 F.R.D. 177, 179 (M.D. Fla. 1986) (footnote and citations omitted); see also  United States v. Griesbeck, No. 10-20108-BC, 2011 WL 528579, at *4 (E.D. Mich. Feb. 8, 2011) (internal marks omitted) (finding defendant was not entitled to information regarding the "precise nature, character and circumstances of any words uttered or acts engaged in" by him).  Ying has not demonstrated that he is entitled to the more precise information he seeks, and for the foregoing reasons, his motion for a bill of particulars, [Doc. 36], is **DENIED**.

### III.  CONCLUSION

For the reasons stated herein, Ying's motion for bill of particulars, [Doc. 36], is **DENIED**, and it is **RECOMMENDED** that his motion to dismiss the indictment, [Doc. 35], be **DENIED**.

There are no other pending matters before the Magistrate Judge, and the undersigned is aware of no problems relating to the scheduling of this case.

**IT IS THEREFORE ORDERED** and **ADJUDGED** that this action be and the same is hereby, certified Ready for Trial.

**IT IS SO ORDERED** and **RECOMMENDED**, this 17th day of September, 2018.

RUSSELL G. VINEYARD
UNITED STATES MAGISTRATE JUDGE