IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | CRIMINAL INDICTMENT |
| JUN YING, | NO. 1:18-CR-74-AT |
| Defendant. | |

# **ORDER**

Defendant Jun Ying, who is charged with two counts of insider trading, asks the Court to dismiss the Indictment in his case. Magistrate Judge Russell Vineyard's Final Report and Recommendation [Doc. 59] recommends the denial of Defendant's Motion to Dismiss the Indictment [Doc. 35-1]. Defendant objects to the Magistrate Judge's findings that: (1) the Indictment properly alleges the essential elements of insider trading; and (2) the Indictment is not multiplicitous [Doc. 61].

A district judge has broad discretion to accept, reject, or modify a magistrate judge's proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 680 (1980). Pursuant to 28 U.S.C. § 636(b)(1), the Court reviews any portion of the R&R that is the subject of a proper objection on a *de novo* basis and any non-objected portion on a "clearly erroneous" standard. Accordingly, the Court has reviewed the Defendant's motion *de novo* as

Defendant's objections go to the essence of the Magistrate Judge's evidentiary and legal analysis.

## I. Abbreviated Factual Background[1]

Defendant Jun Ying is charged with two counts of securities fraud and insider trading, in violation of: 18 U.S.C. § 1348, 15 U.S.C. §§ 78j(b) and 78ff; and 17 C.F.R. §§ 240.10b-5 and 240.10b5-1. (Doc. 1, Indictment).

Defendant was formerly an employee of Equifax Inc. and served as the company's Chief Information Officer for the US information Solutions business unit. (*Id.* ¶ 3.) While Defendant was employed in this capacity, Equifax's databases were hacked from mid-May 2017 until July 2017. (*Id.* ¶ 6.) Equifax discovered this data breach on July 29, 2017 and responded, in part, by changing the administrative credentials for many of its internal databases. (*Id.* ¶¶ 7-9.) Through his employment, Defendant was made aware of these internal database changes. (*Id.*) On August 25, 2017, Defendant and other employees reporting to him were asked to assist in responding to a breach situation involving a potential Equifax customer, though they were actually assisting in the response to a breach of Equifax's entire system. (*Id.* ¶ 12.) That same day, Defendant sent a text message that read: "Sounds bad. We may be the one breached" and "I'm starting to put 2 and 2 together." (*Id.* ¶ 13.)

Three days later, on August 28, 2017, Defendant allegedly conducted internet searches regarding the prices of stock of the company Experian after that

---

[1] For a more detailed factual background, *see* the "Factual and Procedural Background" portion of the Magistrate Judge's R&R, which the Court adopts. (Doc. 59 at 2-4.)

company had experienced a data breach in 2015. (*Id.* ¶ 14.) Less than an hour after conducting these searches, Defendant exercised all of his available stock options for Equifax securities, thereby receiving 6,815 shares of Equifax stock. (*Id.* ¶ 15-16.) Defendant then sold the 6,815 shares for a profit of over $480,000. (*Id.*) The following day, Defendant sent another text message (to a different individual) that said: "I think some big media announcement is coming about us," and "I think it might be bad." (*Id.* ¶ 17.) Nine days later, on September 7, 2017, Equifax publicly disclosed the data breach, and the following day, Equifax's stock dropped in price. (*Id.* ¶ 18.)

## II. Defendant's Objections

### a. Sufficiency of the allegations in the Indictment

Defendant has filed a motion to dismiss the Indictment, arguing that the Indictment fails to allege the essential elements of the charged offenses, specifically, that Mr. Ying knowingly possessed material nonpublic information and that Mr. Ying used such information when he traded. (Motion to Dismiss, Doc. 35 at 1.) The Magistrate Judge determined that the Indictment sufficiently indicates the material nonpublic information the Defendant allegedly possessed (the data breach itself), when he possessed it, and that he traded on the basis of that information. (R&R, Doc. 59 at 14-16.) In addition, the Magistrate Judge concluded that the Indictment was not flawed for failing to use the word "used" because "linguistic precision is not required in an indictment," and an indictment's "allegations are sufficient if they include all elements of the offense

and briefly describe the facts of the commission of the offense." (R&R at 17) (quoting *United States v. deVegter*, 198 F.3d 1324, 1330 (11th Cir. 1999).) The Court takes Defendant's specific objections in turn.

### i. Identification of material nonpublic information

Defendant first argues in his objections that the Magistrate Judge "erroneously found that the indictment identifies the material nonpublic information at issue." (Def. Obj. at 5-9.) In particular, Defendant contends that the Magistrate Judge (1) misread paragraph 19 of the Indictment and (2) misapplied that paragraph to both counts of the Indictment.

Paragraph 19 of the Indictment concerns "Defendant's Scheme to Defraud" and alleges that:

> 19. In violation of his obligations under the Insider Trading Policy and of the fiduciary and other duties of trust and confidence that JUN YING owed to Equifax and its shareholders, on or about August 28, 2017 JUN YING traded in Equifax securities on the basis of material nonpublic information related to the data breach, and thereby earned illegal profits and illegally avoided losses.

(Indictment ¶ 19.) Defendant argues that this paragraph does not state that the material nonpublic information *is* the Equifax data breach. (Def. Obj. at 6.) Defendant's argument, which relies on a highly technical interpretation of a single paragraph in the Indictment, both misconstrues the standard for a sufficient indictment and ignores the context of the remaining paragraphs in the Indictment.

4

"In determining whether an indictment is sufficient, we read it as a whole and give it a common sense construction." *United States v. Jordan*, 582 F.3d 1239, 1245 (11th Cir. 2009). Further, "the indictment's validity is to be determined by practical, not technical, considerations." *Id.* (internal citations omitted). An indictment is sufficient as long as it: (1) presents the essential elements of the charged offense; (2) notifies the accused of the charges to be defended against; and (3) enables the accused to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution of the same offense. *Id.* (citing *United States v. Woodruff*, 296 F.3d 1041, 1046 (11th Cir. 2002)).

Based on a "common sense construction" and "practical [] considerations," the Indictment here, "read as a whole," clearly gives Defendant fair notice of the nature of the material nonpublic information involved in the charged offense, sufficient to enable him to prepare a defense. The material nonpublic information Defendant is alleged to have traded on – the data breach itself — is ubiquitous in the Indictment. The Indictment explains that unknown individuals obtained access to some of Equifax's databases (¶ 6); that Equifax discovered this suspicious activity and attempted to determine the scope of the breach (¶¶ 7-8); that Equifax enacted a "blackout date" for trading for those aware of the breach (¶ 11); that Defendant was "asked to assist in responding to the breach, although he was not informed that Equifax had been breached" (¶ 12); that Defendant sent a text saying "We may be the one breached" (¶ 13); and that Defendant conducted

research about other data breaches (¶ 14). Defendant's attempts to paint this as a Kafkaesque situation, in which he is not "sufficiently appraised of what he must be prepared to meet[2]," fall short in the full context of the Indictment.[3]

### ii. Alleging "knowledge" of material nonpublic information

Defendant next argues that the Indictment is insufficient because it does not allege knowledge of material nonpublic information. (Def. Obj. at 10.) Specifically, Defendant contends that "the few factual allegations in the Indictment that actually bear on Mr. Ying's knowledge of such information are too scant and conclusory to support an inference that Mr. Ying knew Equifax had been breached at the time he traded. . . ." (*Id.*)

The Court is not persuaded by this argument. Based on the facts alleged in the Indictment, the Court does not have to speculate as to how the Defendant might have acquired knowledge of the data breach. *See United States v. Bobo*, 344 F.3d 1076, 1084 (explaining that an "indictment that requires speculation on a fundamental part of the charge is insufficient"); *but see, United States v. Sharpe*, 438 F.3d 1257, 1263 n.3 (11th Cir. 2006) ("It is not necessary for an indictment . . . to allege in detail the factual proof that will be relied upon to

---

[2] (Def. Obj. at 7.)
[3] Defendant's argument that "Paragraph 19 of the Indictment does not apply to Count Two of the Indictment" is addressed by the above discussion. Although it is true that Paragraph 21 of the Indictment incorporates Paragraphs 2-18 – and not paragraph 19 — as Defendant points out, Paragraphs 2-18 sufficiently show that the material nonpublic information at issue is the data breach itself, as discussed above.

support the charges. The information, if essential to the defense, can be obtained by a motion for a bill of particulars.").[4]

With respect to Defendant's alleged knowledge, the Indictment specifically asserts that: (1) Defendant was aware that Equifax changed credentials for many internal databases (¶ 9); (2) that Defendant was asked to assist in responding to a breach, not of the company's databases, but with respect to a single customer (¶ 12); (3) that Defendant sent a text message saying "We may be the one breached" and "I'm starting to put 2 and 2 together" (¶ 13); that Defendant conducted online research about the price of stock as related to the data breach of a different company (¶ 14); and that he sent a text saying "I think some big media announcement is coming about us" and "I think it may be bad," all before the data breach was announced. (¶ 17.) The Court finds that these allegations sufficiently allow for the inference that Defendant had knowledge of the data breach when he traded. *See Woodruff*, 296 F.3d at 1048 (finding that indictment need not expressly allege that the defendant acted with knowledge though statute requires proof that defendant acted knowingly where allegations necessarily assumed such knowledge).[5]

---

[4] Defendant initially filed a motion for a bill of particulars in connection with his motion to dismiss the indictment. (Doc. 36.) The Magistrate Judge denied this motion. (R&R at 20.) Defendant has represented that he does not object to the Magistrate Judge's disposition of his motion for bill of particulars because the government has ultimately "provided the requested particulars in its opposition briefs." (Def. Obj. at n.9.)

[5] Defendant also repeatedly notes that Equifax lied to Defendant about the data breach, assumedly to show that this deception makes it unreasonable to infer that Defendant knew of the breach. The Court disagrees. The fact that Equifax told Defendant he was assisting with a response to a breach related to a single customer rather than of the entire database does not make unreasonable that Defendant possessed knowledge of the breach, in light of the above-

In addition to his argument that the Indictment does not include a sufficient factual basis for knowledge, Defendant attacks the government's broader theory of this case, that is, that Defendant can be said to have knowledge of the material nonpublic information (the breach) without having been explicitly told of the breach. (Def. Obj. at 13.) In support, Defendant argues that the Magistrate Judge misapplied the cases identified by the government in support of this theory: *United States v. Mylett*, 97 F.3d 663 (2d. Cir. 1996) and *SEC v. Steffes*, 805 F.Supp. 2d 601 (N.D. Ill. 2011). (*Id.*)

Defendant's arguments are unconvincing. In *United States v. Mylett*, the defendant (the tippee) was told by his friend (the tipper), the Vice President of Labor Relations at AT&T, that the tipper believed that AT&T was going to attempt to acquire NCR Corporation. *Mylett*, 97 F.3d at 666. Defendant then made a series of trades based on this information, through which he benefitted financially. *Id.* The Second Circuit in *Mylett* rejected the defendant's argument that, because the tipper (AT&T insider) was not expressly told about the acquisition and did no more than "piece together" evidence obtained while working for AT&T, his knowledge was not material nonpublic information. *Id.* at 667-668.

The court in *Mylett* specifically noted that the defendant's argument must fail because in a previous case, "we upheld a trial court's finding of misappropriation where the defendant traded on information that he pieced

---

mentioned evidence. As the Magistrate Judge notes, this argument involves the credibility of the facts asserted, which is not at issue on a motion to dismiss (R&R at 16.)

8

together through the course of his employment." *Id.* at 668 (citing *SEC v. Materia*, 745 F.2d 197[6]). Thus, Defendant's argument here that *Mylett* is irrelevant, because it was the tipper who pieced together information rather than the defendant, is not compelling. The Second Circuit's discussion clarifies that information pieced together can constitute material nonpublic information, either if pieced together by a tipper or by a defendant tippee. *Id.*

Next, Defendant challenges the Magistrate Judge's reliance on *SEC v. Steffes* because there were facts in *Steffes* that indicated that "the defendant had a working relationship with a person in possession of the nonpublic information" and because of the unusual trading activity by the defendant and his family. (Def. Obj. at 15.) But here, Defendant's trading activity can also be classified as unusual. Moreover, the court in *Steffes* clarified that, the defendant was "alleged to have pieced together for himself what was occurring based on information that was available to him as an [] employee. This is a cognizable theory: it is well established that a defendant can be held liable for insider trading when he or she obtains and acts on fragments of information, which 'piece[d] together,' constitute material nonpublic information." *Steffes*, 805 F.Supp. at 610 (internal citations omitted). This is exactly what the government is alleging in this case; the

---

[6] In *Materia*, the defendant was a copyholder at a firm that printed financial documents. Through this employment, the defendant was able to "divine the identities" of at least four tender offer targets, where the offeror (or its law firm) had omitted or left blank information that might identify a target company. Based on this knowledge that he had pieced together, defendant purchased stock in those target companies and then, after the offers were made public, sold his holdings for substantial gains. The Second Circuit held that the defendant's misappropriation of material nonpublic information, and his subsequent trading on that information, violated Section 10(b) and Rule 10b-5 of the Securities Exchange Act of 1934. 745 F.2d. 197, 199 & n. 2 (2d Cir. 1984).

9

factual differences regarding the way in which the government alleges the Defendant "pieced together" the information here do not render the "cognizable theory" inapplicable. Defendant's arguments speak more to the strength of the evidence rather than to the validity of the Indictment.[7]

### iii. Alleging "use" of material nonpublic information

In his final objection regarding the sufficiency of the indictment's allegations, Defendant argues that the Magistrate Judge erroneously found that the indictment sufficiently alleges "use" of material nonpublic information. (Def. Obj. at 16.) The Indictment's allegations that Defendant traded "on the basis of material nonpublic information" are not sufficient to allege use, according to Defendant, because, under 10b5-1, the term "on the basis of" satisfies a "knowing possession" standard but not the Eleventh Circuit's "use" standard.[8] (*Id.*) Because the Eleventh Circuit "rejected" a "knowing possession" standard in favor of the "use" standard in *SEC v. Adler*, 137 F.3d 1325 (11th Cir. 1998), Defendant contends that 10b5-1 is inapplicable in this case and its presence in the Indictment is fatal. (Def. Obj. at 17.18.)

Both parties acknowledge that the Eleventh Circuit has not addressed whether an individual criminally charged with insider trading must "use" rather

---

[7] Defendant also notes that *Steffes* is a civil case, and thus subject to a lower burden of proof. (Def. Obj. at 15.) While this is true, this distinction relates to the lighter burden the government will have to carry at trial in a civil case rather than the essential elements of the violation. *See In re Initial Pub. Offering Sec. Litig.*, 241 F.Supp. 2d 281, 388 at n. 164 (S.D.N.Y. 2003) ("Rule 10b-5 is interpreted identically in the civil and criminal contexts.")

[8] Rule 10b5-1 defines "on the basis of" as occurring where "the person making the purchase or sale was aware of the material nonpublic information when the person made the purchase or sale." 17 C.F.R. § 240.10b5-1(b) (2000).

than simply "knowingly possess" the material nonpublic information he traded. (Mot. to Dismiss, Doc. 35-1 at 19 n. 8; Gov. Resp., Doc. 46 at 16 n. 2.) The Court sees no reason why *Adler*'s reasoning or its application of the use standard would not apply in the criminal context, consistent with the requirement of willfulness under § 78ff.

Assuming that the "use" standard applies in this case, Defendant's argument is nevertheless unpersuasive. Defendant's invocation of *Adler* is inapposite under the circumstances of the Court's review of the instant Motion to Dismiss the Indictment. It is true that the Eleventh Circuit in *Adler* adopted a new test for proof of a civil insider trading violation, finding that:

> mere knowing possession –i.e. proof that the insider traded while in possession of material nonpublic information—is not a *per se* violation. However, when an insider trades while in possession of material nonpublic information, a strong inference arises that such information was used by the insider in trading. The insider can attempt to rebut the inference by adducing evidence that there was no causal connection between the information and the trade—i.e., that the information was not used. The **factfinder** would then weigh all of the evidence and make a finding of fact as to whether the information was used.

137 F.3d at 1336. (emphasis added). The *Adler* court thus concluded that use is required to establish liability for insider trading but that a strong inference of use arises when an insider trades while in possession of material nonpublic information. *Id.* Of note, the court in *Adler* explained that, should the insider attempt to rebut the inference of use, the factfinder must determine whether the information in question was actually used. *Id.* At this stage, in reviewing a

motion to dismiss, the Court is not tasked with determining whether Defendant in fact used the material nonpublic information he allegedly possessed. The Court simply must determine whether the Indictment is sufficient.

The Indictment here alleges that Defendant "exercised approximately 6,815 Equifax stock options and sold the resulting shares on the basis of material nonpublic information." (Indictment ¶ 22.) It also alleges that Defendant exercised these stock options for a profit of $480,000 (*Id.* ¶ 16) days after sending a text message stating "[w]e may be the one breached" and an hour after conducting research about the stock price in connection with a different company that had been subject to a data breach. (*Id.* ¶¶ 13-14.)

As noted above, an indictment is not subject to dismissal simply because it does not contain the exact words necessary to prove a crime. *de Vegter*, 198 F.3d at 1330. (holding that failing to allege a "fiduciary" duty did not require dismissal of the indictment). Further, "allegations are not jury instructions." *United States v. Melvin*, 143 F.Supp. 3d 1354, 1379 (N.D. Ga. 2015). In arguing that the Indictment is insufficient for failing to include the word "use" in light of the proffered factual allegations, Defendant attempts to raise the standard for verbal precision in pleading an indictment. Similarly, in arguing that the Indictment is fatally flawed for including the words "on the basis of," Defendant asks the Court to impose technical constraints on the Indictment which are not required under

any legal authority.[9] The Court agrees with the Magistrate Judge that the Indictment sufficiently identifies the material nonpublic information at issue, sufficiently alleges knowledge and willfulness (as to Count 2) and a factual pattern that might reasonably give rise to an inference of Defendant's deceptive use of the material nonpublic information (i.e. the fact of a major system breach) for his own securities trading benefit. Accordingly, the Indictment is not fatally flawed for failing to include the word "use" or including the words "on the basis of." At trial, however, the Government will have to establish sufficient evidence to demonstrate defendant's willful "use" of a deceptive scheme to engage in the stock option trades at issue in violation of § 78j(b) and §77ff. Defendant will have the opportunity to present evidence and rebut any inference that Defendant used the information of the data breach when he traded, as provided by *Adler*.[10]

---

[9] This argument is further weakened by the fact that the Eleventh Circuit Pattern Jury Instruction for insider trading provides that the SEC must prove that the defendant "traded securities on the basis of material, nonpublic information." Pattern Civil Jury Instruction 6.3.2 Insider Trading. While this is the Pattern Instruction for the civil, rather than criminal charge, it shows that, even where the "use test" is required (in a civil case), the words "on the basis of" are harmonious with the use requirement.

[10] Defendant also argues that because Rule 10b5-1's knowing possession standard does not apply in this Circuit under *Adler*, its inclusion renders the Indictment defective. The Court disagrees. As discussed above, it is correct that the Eleventh Circuit in *Adler* laid out a higher standard for proving an insider trading violation with the "use" standard, and the Court sees no reason why this heightened standard would not apply in this case. Yet the fact that the Eleventh Circuit has adopted a higher standard than the SEC has for defining trading "on the basis of" material, nonpublic information does not render the Indictment inadequate, specifically where 10b5-1 notes that "[t]he law of insider trading is otherwise defined by judicial opinions construing Rule 10b-5, and Rule 10b5-1 does not modify the scope of insider trading law in any other respect." 17 C.F.R. § 240.10b5-1. As discussed thoroughly herein, the Indictment details sufficient facts to allow the inference that Defendant used material nonpublic information when he traded. The fact that the Indictment includes reference to Section 240.10b5-1 does not dilute this inference of use nor does it lower the burden that the government will have to show at trial, that is, that Defendant "used" material nonpublic information (of the data breach) when he traded.

**b. Multiplicity**

Defendant's second argument on his Motion to Dismiss is that the Indictment is mutliplicitous because it charges Defendant with the same offense in two separate counts. (Def. Obj. at 20.) Defendant's multiplicity arguments are thoroughly addressed in the R&R. (R&R at 5-10.) The Court finds that the Magistrate Judge properly analyzed the issue of multiplicity under the *Blockburger* test[11] and its progeny, which instruct courts to determine "whether an indictment is multiplicitous, verifying that each count requires proof of an additional fact which the other does not." *United States v. Jones*, 601 F.3d at 1247, 1258 (11th Cir. 2010). The Court therefore concurs with the Magistrate Judge's conclusion that the counts alleged in the Indictment are not multiplicitous. (R&R at 9.) The Court, however, will briefly address Defendant's specific objections to the analysis in the R&R.

The Magistrate Judge determined that a violation of §§ 78j(b) and 78ff requires, among other things, proof that a Defendant acted willfully, whereas a violation of § 1348 does not.[12] (R&R at 8) (citing *United States v. Hussain*, 2017

---

[11] In *Blockburger v. United States*, 284 U.S. 299 (1932), the Supreme Court established a test to determine whether two statutory provisions prohibiting the same conduct violate the Double Jeopardy Clause, or whether each count of the indictment may result in a conviction for the same offense. The test asks "whether each provision [or count] requires proof of a fact which the other does not." *Id.* at 304.

[12] The Magistrate Judge also found that a violation of §§ 78j(b) and 78ff requires the use of an instrumentality of interstate commerce in connection with a purchase or sale of a security, which is not a requirement of a violation of § 1348. (R&R at 8.) Further, the Magistrate Judge determined that securities fraud under 15 U.S.C. § 78j(b) and 78ff does not have a money or property element, whereas securities fraud under 18 U.S.C. § 1348 does require a scheme to obtain money or property, as do mail and wire fraud." (*Id.*) (citing *Stinn v. United States*, 856 F. Supp. 2d 531, 538 n. 6 (E.D.N.Y. 2012) *aff'd*, 515 F. App'x 4 (2d Cir. 2013.) Lastly, the

14

WL 4865562 at *8 (N.D. Cal. Oct. 27, 2017).) Defendant objects to the conclusion that § 1348 does not require willfulness, arguing that "the Eleventh Circuit has not held that willfulness is unnecessary for charges of mail, wire, securities, and bank fraud." (Def. Obj. at 22.) In making this argument, however, Defendant has cited no legal authority that finds that § 1348 *does* require proof of willfulness.

Defendant relies on an Eleventh Circuit case involving conspiracy and aiding and abetting wire and bank fraud because the court noted that "for a conviction of aiding and abetting bank fraud, the evidence must show that the defendant had the same willfulness and unlawful intent as the actual perpetrators of the fraud." *United States v. Teers*, 591 Fed. App'x 824, 843 (11th Cir. 2014). But *Teers* does not involve a charge under § 1348. Moreover, this dicta, related to a different charge, does not trump the actual language of the statute (§ 1348), which does not include the word willful or willfully. This omission of the word willfully in § 1348 lies in contrast to the language of §§ 78ff which explicitly includes the word willfully. *Compare* 18 U.S.C. § 1348 *with* 15 U.S.C. § 78ff.[13]

---

Magistrate Judge determined that a violation of § 1348 requires that the scheme be in connection with any security of an issuer with a class of securities registered with the SEC or required to file reports with the SEC. (*Id.* at 7.)

[13] Defendant also argues that willfulness is an element of § 1348 because two courts in this district have, on § 1348 charges, instructed the jury to find that the defendant "acted knowingly and willfully and with an intent to defraud." *See United States v Slawson*, No. 1:14-cr-186-RWS (N.D. Ga. Aug 17, 2015), ECF No. 118*; United States v Jinks,* No. 3:14-CR-22-TCB (N.D. Ga. Dec. 9, 2015), ECF No. 209. But in both cases, the indictment itself charged that the defendant "did knowingly and willingly execute a scheme" (*Slawson,* ECF No. 1 ¶ 8*; Jinks*, ECF No. 1 ¶ 1.) Thus, the jury was charged pursuant to the language in the indictment itself. Relevantly, while not directly confronted with the issue of whether § 1348 requires a defendant to act "willfully," the court in *Slawson* noted differences between § 1348 and the Securities Exchange Act section 10(b), Rule 10b-5, and 15 U.S.C. §§ 78ff and 78j(b). *Slawson*, 2014 WL 5804191 at *6 (N.D. Ga. Nov. 7, 2014) *adopted by* 1:14-cr-186-RWS (N.D. Ga. Dec. 10, 2014) ECF No. 39. Specifically, on the motion to dismiss in *Slawson*, the court admonished the defendant for arguing that the

Relatedly, Defendant argues that the Magistrate Judge adopted an incorrect interpretation of the legislative history of § 1348 in determining that willfulness is not required. Defendant then states that "it is clear that Congress did not intend for individuals to be charged with classical insider trading under both Section 1348 and Section 10(b)." (Def. Obj. at 23.) Yet Defendant establishes no basis for this conclusory statement to counteract the Magistrate Judge's discussion of the intent of Congress in enacting § 1348. (R&R at 8-9.)[14]

Finally, the Court adopts the Magistrate Judge's finding that, "should the evidence at trial demonstrate that the charges were improperly multiplied, the trial court can still remedy any violation by consolidating the counts or requiring dismissal." (R&R at 10) (citing *United States v Ford*, 2013 WL 1320739 (N.D. Ga. Mar. 5, 2013) *aff'd*, 784 F.3d 1386 (11th Cir. 2015).) Defendant may reassert this objection at trial.

---

elements of Title 18 security fraud violations were not met based upon case law interpreting Rule 10(b) and §§ 78ff, 78j, because Slawson was not charged with any 10b violations. *Id.* In explaining why legal authority related to an uncharged offense (violation of the Security Exchange Act) was not persuasive as to the charged offense (violation of § 1348), the court explained that "[t]he Government's response to the motion to dismiss fully discusses the distinction between the Security Exchange Act of 1934 and 18 U.S.C. § 1348; the purpose of the latter provision being in part to avoid the technicalities and difficulties of navigating traditional securities laws in prosecuting fraudulent security activities." *Id.* at n.3. This discussion undercuts Defendant's reliance on *Slawson*.

[14] *See also supra* n. 10, *United States v. Slawson*, 2014 WL 5804191 at *6 (N.D. Ga. Nov. 7, 2014) *adopted by* 1:14-cr-186-RWS (N.D. Ga. Dec. 10, 2014) ECF No. 39 (noting that the specific purpose of § 1348 sets it apart from violations of the Security Exchange Act).

### III. Conclusion

For the foregoing reasons, the Court **ADOPTS AS AMENDED** the Magistrate Judge's R&R [Doc. 59] and **DENIES** Defendant's Motion to Dismiss the Indictment [Doc. 35]. This case is hereby set for trial to begin on Monday, February 14, 2019, at 9:30 AM in Courtroom 2308, United States Courthouse, 75 Spring Street, S.W., Atlanta, Georgia. The pretrial conference is set for Wednesday, January 9, 2019, at 10:30 AM in Courtroom 2308. By 5:00 PM on Friday, December 21, 2018, the parties are to file their respective motions in limine and voir dire questions. By 5:00 PM on Friday, December 21, 2018, the Government is to file a brief statement of facts the parties can rely on for voir dire. By 5:00 PM on Friday, January 4, 2019, the parties are to file any objections to those items listed above. The time from December 4, 2018, to January 14, 2019, shall be excluded from computation under the Speedy Trial Act pursuant to 18 U.S.C. § 3161, *et seq.* The Court finds that the ends of justice are served and are consistent with both the best interest of the public and individual justice in this matter.

**IT IS SO ORDERED** this 4th day of December, 2018.

_____
**AMY TOTENBERG**
**UNITED STATES DISTRICT JUDGE**